MAX COHEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 12038, 12039. Promulgated December 19, 1947.

*William H. Quealy, Esq.,* and *H. C. Castor, Esq.,* for the petitioner.
*Gene W. Reardon, Esq.,* and *Harlow B. King, Esq.,* for the respondent.

1160

**1162**

OPINION.

VAN FOSSAN, *Judge*: In these cases we are dealing with the tax liability of a taxpayer whose income admittedly was derived from his connection with illegal business activities. The night clubs where liquor was sold and gambling carried on, the operation of slot machines, and the operation of a "handbook" for the placing of bets on horse racing were all in violation of laws of the State of Kansas. Most of the witnesses came from that lawless fringe of society where arrests and the serving of time for law violations are common occurrences. The crimes of which various of the witnesses had been convicted ranged all the way from bootlegging to cattle rustling. In this situation it is to be expected that the testimony will present sharp conflicts and irreconcilable differences.

A record such as is here before us requires a careful weighing of the self-interests of the witnesses and the consideration of the inherent probabilities of truth or falsity. A record may be judged also by the absence of testimony as well as by its presence. Here, although present in the court room during the hearing, the taxpayer, for his own reasons, elected not to take the stand as a witness. Theoretically, the taxpayer should, in a case such as this, be his own best witness. His unexplained failure to testify gives rise to a presumption that had he testified and told the truth his testimony would have been unfavorable to his cause. *Wichita Terminal Elevator Co.*, 6 T. C 1158, 1165.

Since the taxpayer kept no records from which his income could be determined (excepting only as to the oil business in which he sustained losses) the respondent was obliged to resort to other methods to determine such income. The Commissioner elected the method which

he denominated "excess cash expenditures." In this method he started with the cash on hand at the beginning of the year, if any, and to this added all ascertainable cash receipts. He then aggregated all cash expenditures and from the figure so obtained deducted the figure of cash on hand and ascertained cash receipts. The difference between the two figures he denominated "Excess cash expenditures," which sum he added to the petitioner's reported income and determined the consequent deficiency. The respondent also determined that petitioner had filed a false and fraudulent return with intent to evade tax for each of the years and added penalties of 50 per cent of the tax. What was said by the Circuit Court of Appeals in *Gleckman* v. *United States*, 80 Fed. (2d) 394, is precisely pertinent here as a part of the background for considering the case:

It is apparent that when a taxpayer * * * engages in such a multiplicity of financial transactions in any year, * * * and received so many large and small items of money, running up to a hundred and twenty-five or a hundred and fifty thousand dollars, as indicated by his bank accounts, and the testimony which he offered, and if he keeps no account whatever and avails himself of his right not to answer questions; it would not be possible for any complete account of his business to be made up for the government by any kind of skilled accountancy. More especially, where the business transactions may be of an illegal nature. * * * Taxation is a practical matter and taxpayers do not terminate all duty to pay income tax by willfully failing to keep account of their income. * * *

The petitioner does not seriously question either the method employed by respondent or the aggregate amount ($148,080.11) determined by respondent as excess cash expenditures. See *Kenney* v. *Commissioner*, 111 Fed. (2d) 374. He does challenge the accuracy of the cash receipts, contending that various items are not correctly accounted for in respondent's computation and that a loan of $35,000 in 1941 and one of $25,000 in 1942 were not considered by respondent as cash received. He also claims there is no proof of fraud in any year.

The petitioner erroneously assumes, and states in his argument, that the respondent has the burden of proof as to the years 1936 to 1939, inclusive. The respondent has the burden of proving fraud as to all years, and as to the years 1936 to 1939, unless fraud be found, the statute of limitations bars the assessment and collection of any deficiencies. But, although the respondent has the burden of proving fraud, this obligation relates to the penalty only and does not relieve the petitioner of the burden of disproving the correctness of the deficiency. The burden still remains on the taxpayer to overcome the presumption of correctness attaching to the Commissioner's finding of the amount of tax due. *Snell Isle, Inc.* v. *Commissioner*, 90 Fed. (2d) 481; *Leonard B. Willits*, 36 B. T. A. 294, 300; *Kenney* v. *Commissioner, supra*.

As to the years 1936 to 1939, inclusive, the record does not afford any basis for a conclusion that respondent's determination is erroneous.

Excepting the finding of fraud, the excess cash expenditures are the only issue presented for these years. No attempt was made to show that petitioner had any cash on hand on January 1, 1936. The evidence of a large sum claimed to be on hand in November 1936 is not related back to the beginning of the year and is not, in itself, impressive of its accuracy. As to the miscellaneous items, the proof is so confused and unconvincing as to require us to disregard it.

There is credible evidence that during these years petitioner received large sums of money as payment for protection of night club operators and as percentage of receipts from various illegal enterprises which were not reported as income. Certain it is also that he has not proven respondent's determination of excess cash expenditures to be erroneous. We therefore approve the finding of the deficiencies.

As above observed, assessment and collection of the deficiencies for the years 1936 to 1939, inclusive, are barred unless fraud is found for such years. We said in *M. Rea Gano*, 19 B. T. A. 518, 533:

A failure to report for taxation income unquestionably received, such action being predicated on a patently lame and untenable excuse, would seem to permit of no difference of opinion. It evidences a fraudulent purpose.

We have no doubt, on the record, that petitioner received large sums of income which he failed to report for taxation. He did not take the stand to explain his transactions or to account for his failure to report all his income. The proof is clear and convincing that some part of the deficiency for each of the years 1936 to 1939, inclusive, was due to fraud with intent to evade tax. The assessment and collection of the taxes due and the penalties are not barred by the statute of limitations.

For the year 1940 the respondent determined no amount as excess cash expenditures. He added to income two items: One of $2,725.30 which was not put in issue, and the second of $2,552.27 claimed as a net loss carry-over. At the outset of the hearing, counsel for petitioner, in effect, abandoned any contention of error, except as to fraud, for the year 1940. No proof was introduced specifically referring to the above item. Consequently, the record is barren of proof of error in respect of the deficiency. There was likewise no proof of fraud as to 1940. We approve the deficiency and disapprove the penalty for fraud.

In respect of the deficiency for the year 1941, numerous errors were alleged, of which three remained at issue: The sum of $2,000 claimed as business expense for advertising; the item of $3,054.40 added to income as additional income received from Ray Watson, a slot machine operator; and the sum of $36,916.26 excess cash expenditures.

The record is very sparse as to the item of advertising. Petitioner spent the sum of $2,000 for advertising space in local newspapers at the solicitation of the papers. It is not established to which of petitioner's business activities this alleged advertising was related, nor is it shown to be an ordinary and necessary expense of any such business. Respondent's action is approved.

In explanation of his action in adding $3,054.40 to petitioner's income the respondent stated:

* * * Your income is increased $3,054.40 for additional income realized from the Ray Watson slot machine route. You reported the amount of $6,108.80 being 25 percent of the total income, whereas you should have reported the amount of $9,163.20 which is 37½ percent of the total income from such route.

Petitioner contends that the unreported percentage of profits was a payment on account of the purchase of the slot machines by Watson from petitioner and that, accordingly, he correctly reported all income received from Watson. We are satisfied that this explanation delineates the true posture of the parties in 1941 and that respondent erroneously charged this item to petitioner's income.

The third item is excess cash expenditures determined by the respondent to be $36,916.26. Petitioner contends that in accounting for cash receipts and expenditures he failed to take into cash receipts a loan of $35,000 procured in 1941 from his mother-in-law, Myrtie Hale, and repaid in part in 1944. The loan was said to have been used in petitioner's oil business.

We have given special care to the evidence as to this loan and have come to the conclusion that petitioner never actually borrowed from his mother-in-law the alleged sum of $35,000 in cash in 1941. This conclusion requires us to reject as false a considerable lot of testimony calculated to support the fact that a loan had been made. Among the considerations leading us to this conclusion are the facts that, although petitioner had a complete set of books and records for his oil business and, albeit no reason was shown why a record should not be made on such books, no record was made as to this loan. So far as known, no record of any kind was ever made of a loan. No note was given and the money never went through petitioner's bank account dealing with the oil business. No revelation of the fact of the loan was ever made to any representative of the Government during all the months of investigation, nor does it appear that any such fact was adduced at the criminal proceedings involving this taxpayer's tax liability for the same year. The concealing or absence of any such fact as to the alleged loan is in sharp contrast to the treatment of another alleged loan for $25,000 made in 1942, the same having gone through petitioner's bank account and the evidence of the same having been fully

revealed to the Government investigators and in connection with the criminal proceedings. The first mention of the alleged loan of $35,000 was at the hearing before this Court. The further fact that the amount of the claimed loan of $35,000 was almost exactly the amount of the excess cash expenditures ($36,916.26) determined for the year 1941 is, at the least, striking. We do not deem it necessary to quote the testimony to indicate all the queries that arise therefrom. We again refer to the fact that petitioner, who should know most about the matter, did not take the stand to testify.

With our conclusion that no loan was made, petitioner's chief attack on the excess cash expenditures fails. Except as indicated above, as to the Watson item, petitioner has not successfully shown respondent's determination of a deficiency to be in error.

The deficiency for 1942 arose from numerous adjustments by the respondent, of which two remain in issue, i. e., the addition to income of $6,021.62 from the Ray Watson slot machine route and excess cash expenditures in the amount of $42,827.39. The Watson item arose from the same situation as the item for 1941, but it involves different considerations. The respondent disallowed for the same reason stated above for 1941. The proof, however, differs. Petitioner claims the arrangement was that after the slot machines were paid for Watson was to get 50 per cent of the divisible profits and petitioner 25 per cent, the remaining 25 per cent going to Carnahan. Apparently the profits for 1941 paid for the machines. Petitioner admits that he received 50 per cent of the profits in 1942 and still retains the same, including approximately $12,000 which he contends he still owes to Watson. It will be remembered that petitioner did not testify and thus did not admit in person that he owed Watson this sum. The claim of petitioner that he was acting as an agent for Watson when he collected 50 per cent of the profits instead of the 25 per cent due him and that he still owed Watson $12,000 overtaxes our credulity. We can not give credence to the claim or the testimony tending to support it. We affirm the respondent's action in adding $6,021.62 to petitioner's income on account of this item.

Petitioner's chief contention as to the excess cash expenditures of $42,827.39 is that he should have credit, as cash received, for a loan of $25,000 borrowed from one Charles McGee during 1942. The evidence is convincing that petitioner actually borrowed the $25,000 in cash. This conclusion is fully supported by the evidence. A note was given and the money was placed in the petitioner's bank account. The facts surrounding the loan were divulged to the Government representatives at the time of the criminal trial and at other times. Petitioner has established by satisfactory evidence the fact of the loan

and he should be credited with this sum in computing cash coming into his hands. The proof as to the other items by which petitioner sought to reduce the excess cash expenditures is unconvincing and we are unable to find for petitioner on any of such items.

Section 6 (a) of the Current Tax Payment Act of 1943, providing for relief from double payments in 1943, provided in part that "This subsection shall not apply in any case in which the taxpayer is convicted of any criminal offense in respect to the tax for the taxable year 1942 or in which additions to the tax for such taxable year are applicable by reason of fraud."

Following a plea of *nole contendere*, taxpayer was found guilty of filing false and fraudulent income tax returns for the years 1941 and 1942 and sentenced, as appears in the findings of fact. Petitioner's counsel conceded that a plea of *nole contendere* is effective as making applicable the above quoted provision of section 6 (a). (*United States ex rel Bruno* v. *Reimer*, 98 Fed. (2d) 92.) Therefore, respondent is not barred from assessment and collection of any deficiency.

There is further reason why respondent is not barred. We have found as a fact that the petitioner filed false and fraudulent income tax returns for the years 1941 and 1942. The considerations leading to this conclusion in part appear above. Other considerations difficult to itemize or characterize, but eminently persuasive, are to be found throughout the record. As to these two years, we find ourselves persuaded beyond any doubt that petitioner was guilty of fraud.

For the year 1943, respondent made various adjustments, of which two are disputed: An item of $531.62 from Ray Watson, and excess cash expenditures of $5,451.22. The Watson item is part and parcel of a similar item for 1942 and we make similar disposition. The record does not establish that respondent was in error with respect of this item, nor can we find that petitioner has shown respondent's action in adding $5,451.22 to income as excess cash expenditures to be erroneous. We approve this item for failure of proof of error.

Respecting the fraud penalty for 1943, we are not convinced that petitioner was guilty of fraud in filing his tax return for that year. His total income tax net income as reported by him was $51,457.47. The total personal cash received, as found by respondent, was $116,-169.80. The total personal cash paid out was $121,621.02, leaving $5,451.22 as a balance of excess cash expenditures. Without further elaboration we merely state that the record does not substantiate the charge of fraud in the filing of petitioner's income tax return for the year 1943.

*Decisions will be entered under Rule 50.*