Sol Gross d/b as Appalachia Iron and Metal Company v. Commissioner.
Gross v. Commissioner
Docket No. 15004.
United States Tax Court
1949 Tax Ct. Memo LEXIS 52; 8 T.C.M. (CCH) 928; T.C.M. (RIA) 49254; October 11, 1949
*52 Upon the facts, held, ( 1) the assessment or collection of any taxes due for the years 1937 through 1940 is not barred by the statute of limitation, (2) petitioner realized taxable income in 1936 and his failure to file a return in that year was not due to reasonable cause, (3) petitioner understated his income for the years 1937 through 1943 in the amounts determined by respondent, and (4) petitioner was not guilty of intentional wrongdoing in failing to file a return for the year 1936 or of making deliberate false statements on his returns for 1937 through 1943 for the purpose of evading a tax. George A. Grundfast, Esq., for the petitioner. William F. Evans, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion The respondent determined deficiencies in income tax and penalties *53 as follows: 50%
25%
Year
Amount
Penalty
Penalty
1936
$ 83.24
$ 41.62
$ 20.81
1937
401.28
200.64
None
1938
13.80
6.90
None
1939
$ 937.31
$ 468.66
None
1940
392.40
196.20
None
1941
1,535.70
767.85
None
1942
590.29
295.15
None
1943
* 1,202.72
601.36
None
* Deficiencies in income and victory tax. The questions presented are: (1) Is respondent barred by the statute of limitation from the assessment and collection of any tax owing by the petitioner for the years 1937 to 1940, inclusive? (2) Did petitioner for the taxable year 1936 receive net taxable income in the amount of $ 5,281.08? (3) If so, was petitioner's failure to file a return for that year due to reasonable cause and not due to willful neglect? (Section 291, Revenue Act of 1936.) (4) Did petitioner in his income tax returns for the taxable years 1937 through 1943 understate his net taxable income in the amounts determined by the respondent? (5) If so, was petitioner's failure to file his tax return for the year 1936 and were the understatements of his taxable income for the years 1937 through 1943 due to fraud with intent to evade tax? Findings *54 of Fact Petitioner resides in Brooklyn, New York. The returns for the years involved were filed with the collector of internal revenue at Richmond, Virginia. On or about the middle of July 1936 petitioner, then a resident of Brooklyn, New York, moved to Appalachia, Virginia, for the purpose of engaging in the junk business. He remained in that business there for the rest of 1936 and stayed until midsummer of 1944. He discontinued the business then principally because of ill health. When petitioner left Brooklyn in July 1936 to go to Virginia he took approximately $ 6,000 in cash with him. While on the way to Appalachia he purchased some junk and sold it for $ 388.98 before he arrived there. He later deposited this amount in a checking account in the First National Bank of Appalachia, Virginia. Petitioner made several other sales during the taxable year 1936. About the middle of August 1936 petitioner rented a place of business in Appalachia which included a building and lot. He built an enclosure on the lot which he later used to store the junk which he purchased. During 1936 petitioner spent approximately $ 9,000 to $ 10,000 for merchandise or "junk" and $ 5,000 for equipment *55 to put the junk in marketable condition. In addition, he purchased four trucks at a total cost of $ 2,950. During the years 1936 through 1940 petitioner's books consisted of check stubs and a sales book. Those records were destroyed or mutilated by thugs who broke into petitioner's place of business in 1940. For the years 1941, 1942 and 1943 petitioner's books consisted of the following: (1) A book of check stubs which recorded expenditures for both personal and business expenses for part of December 1941 and through February 11, 1942. The expenditures for personal and business expenses are not distinguishable in that book. (2) A "Daily Book" showing wages and hours of employees during part of 1942. (3) A "Daily Book" showing wages and hours of employees for part of 1942 as well as amounts expended for Social Security taxes for those employees. (4) A "Daily Book" showing wages and hours of employees and Social Security taxes paid for those employees for part of 1943 and 1944. (5) A "Cash Book" showing victory tax payments for employees during part of 1943. (6) A "Sales Book" showing sales of merchandise for 1942, 1943 and part of 1944. Petitioner also kept records of expenditures *56 in a book he termed the "little book." Petitioner's books for all of the years before us were inadequate for the purpose of ascertaining his taxable income. Petitioner's tax returns for the years involved were made out by an insurance salesman who lived in Appalachia. He was not an accountant. He prepared petitioner's tax returns from certain records brought to him by petitioner or his daughter which consisted of a book of check stubs and a sales book. Whenever the insurance salesman could not understand what an item in a book represented petitioner or his daughter, who kept petitioner's books part of the time here involved, would explain the items to him. Petitioner's record of bank deposits during the time that he was in Appalachia is as follows: FIRST NATIONAL BANK, APPALACHIA, VIRGINIA
Checking Account
No. of
Total
Balance at
Year
Deposits
Amount
End of Year
1936
28
$ 10,040.58
$ 2,381.08
1937
41
24,955.77
204.06
1938
41
22,939.78
2,425.36
1939
49
17,986.24
2,056.44
1940
53
28,549.94
3,275.59
1941
48
27,302.89
2,438.88
1942
46
36,002.63
3,419.18
1943
35
20,087.21
1,618.95
Savings Account A
Total Amount
Year
of Deposits
Interest
1937
$ 3,500.00
$ 36.46
1938
.90
1939
5,654.09
21.01
1940
6,056.11
122.52
1941
1,378.78
210.35
1942
2,093.23
309.79
1943
4,637.72
177.24
*57 FIRST NATIONAL BANK, BIG STONE GAP, VIRGINIA
Savings Account B
Total Amount
Year
of Deposits
Interest
1937
$ 3,500.00
1938
642.21
$ 2.96
1939
6,569.16
47.71
1940
400.00
78.50
1941
987.83
158.75
1942
386.52
188.75
1943
968.03
90.65
In 1940 petitioner received dividends in the amount of $ 196.99, which he did not mention on his 1940 tax return. Petitioner reported the receipt of interest only on his 1942 tax return. For the taxable year 1936 petitioner reported no income. He assigned as the reason for the failure to file a return that he had no sales during that year. Respondent computed his income for 1936 as follows: Balance in checking account 12/31/36
$ 2,381.08
Living expenses as estimated by re-
spondent
2,900.00
Recomputed income
$ 5,281.08
The $ 2,900 living expenses were based on the exemptions allowed petitioner by the applicable section of the revenue law. The estimated living expenses hereinafter appearing were predicated on the same basis. For the taxable year 1937 petitioner filed an income tax return showing net taxable income received in the amount of $ 2,843.31. His return showed an opening inventory *58 of $ 2,500. Respondent recomputed his income for that year as follows: Accumulated deposits in savings ac-
count A
$ 3,500.00
Accumulated deposits in savings ac-
count B
3,500.00
Interest * 36.46
Living expenses as estimated by re-
spondent
2,900.00
Recomputed income
$ 9,936.46
* This figure represents total interest from all savings. This is true with respect to the amounts for interest hereinafter appearing. Petitioner's return for the taxable year 1938 indicated a net loss of $ 676.67. Respondent recomputed his income as follows: Accumulated deposits in savings ac-
count B
$ 642.21
Interest * 2.96
Living expenses as estimated by re-
spondent
2,900.00
Recomputed income
$ 3,545.17
* $ .90 interest from savings account A not included herein. Petitioner's return for the taxable year 1939 disclosed a net taxable income of $ 2,512.68. Respondent recomputed his income as follows: Accumulated deposits in savings ac-
count A
$ 5,654.09
Accumulated deposits in savings ac-
count B
6,569.16
Interest
68.72
Living expenses as estimated by re-
spondent
2,900.00
Recomputed income
*$ 15,144.26
* The above figures total $ 15,191.97. In the statement attached to the notice of deficiency for the year 1939 respondent used the figure $ 12,175.54 for total bank deposits whereas the statement from the bank officials shows that the bank deposits in the savings accounts for 1939 totaled $ 12,223.25. If the figure of $ 12,175.54 is added to the interest and living expenses, the total is $ 15,144.26. No question has been raised as to the correctness of the figure of $ 15,144.26. We shall therefore assume that it represents the correct total. For the taxable year 1940 petitioner's return showed a net taxable income in the amount of $ 3,241.17. Respondent recomputed his income as follows: Accumulated deposits in savings ac-
count A
$ 6,056.11
Accumulated deposits in savings ac-
count B
400.00
Interest
201.02
Dividends received
196.99
Living expenses as estimated by re-
spondent
2,000.00
Recomputed income
$ 8,854.12
For the taxable year 1941 petitioner's return showed a net taxable income in the amount of $ 2,669.04. Respondent recomputed his income as follows: Accumulated deposits in savings ac-
count A
$ 8,378.78
Accumulated deposits in savings ac-
count B
987.83
Interest
369.10
Living expenses as estimated by re-
spondent
1,500.00
Recomputed income
$ 11,235.71
Petitioner's tax return for the year 1942 disclosed a net income of $ 2,064.90. Respondent recomputed his income as follows: Accumulated deposits in savings ac-
count A
$ 2,093.23
Accumulated deposits in savings ac-
count B
386.52
Interest
498.54
War bond purchased and retained
750.00
Living expenses as estimated by re-
spondent
1,200.00
Recomputed income
$ 4,928.29
Petitioner's tax return for the year 1943 disclosed net taxable income in the amount of $ 4,544.52. Respondent determined his net taxable income for that year as follows: Accumulated deposits in savings ac-
count A
$ 4,632.72
Accumulated deposits in savings ac-
count B
968.03
Interest
267.89
2 War bonds purchased and retained
1,500.00
Living expenses as estimated by re-
spondent
1,200.00
Recomputed income
$ 8,568.64
For each of the taxable years 1936 to 1943, inclusive, petitioner's taxable net income was in the respective amounts as shown in the recomputation thereof by respondent as above set forth. In each of the taxable years 1937 to 1943, inclusive, petitioner in his income tax returns omitted from gross income an amount properly includible therein which was in excess of 25 per centum of the amount of the gross income stated in the return. Petitioner is illiterate and has little or no knowledge of proper accounting methods. Petitioner's failure to file a tax return for 1936 was without fraudulent intent to evade the payment of taxes. His failure to file a return for that year was not due to reasonable cause. His understatement of income for the years 1937 through 1943 was not done willfully or with intent to evade the payment of taxes, and no part of the deficiencies here involved is due to fraud with intent to evade tax. In the statement attached to the notice of deficiency respondent stated as follows with respect to the deficiencies and penalties determined.. "The 50% penalty has been asserted for each of the taxable years 1936 to 1943 inclusive in accordance with the provisions of Section 293 (b) of the 1936 Revenue Act and similar provisions of the 1938 Act and the Internal Revenue Code. "The 25% penalty has been asserted for the taxable year 1936 in accordance with the provisions of Section 291 of the Revenue Act of 1936. "It is held that part of the deficiency for the taxable year 1942 is due to fraud with intent to evade tax. Accordingly, the forgiveness feature of Section 6 (a) of the Current Tax Payment Act of 1943 is not applicable." Opinion HILL, Judge: We shall discuss the issues set forth above in the order of their statement. (1) Statute of limitation. Petitioner states on brief that the "Statute of Limitation under section 275 (c) of Internal Revenue Code bars any recovery for the years 1936-1940, inclusive." [1] He then admits that he signed waiver forms extending the statute, but claims that they are not applicable here because they contained a specific clause that "It is expressly understood that this consent agreement extends the period of limitation upon the assessment and collection of any tax only with respect to the provisions of section 275 (c) of the Internal Revenue Code." Petitioner then adds: *59 "Under Section 275 (c) of the Internal Revenue Code, the burden is upon the Commissioner to prove that the petitioner omitted an amount in excess of 25% of the gross income stated in the tax returns filed by the petitioner, and that the omitted amounts were properly includible income. If the Commissioner fails to sustain that burden, the assessment is barred." He concludes that the respondent has not sustained his burden and therefore the assessment must fail. We have found as a fact that petitioner omitted from his gross income an amount in excess of 25 per cent of the gross income reported in his income tax returns for the years 1937 to 1943, inclusive. Therefore, since he signed consent agreements to extend the period of limitation upon assessment and collection with respect to the provisions of section 275 (c), petitioner has consented to collection and assessment of any taxes due beyond the 5-year limitation provided for in that section. The respondent must prevail on this point. (2) and (3) 1936 - Failure to file return. Petitioner *60 filed no tax return for the year 1936 because it is claimed he made no sales or earned any "form of income" during that year. Respondent determined that petitioner received a net taxable income of $ 5,281.08 during such year, that figure, as shown in our findings, being the total of $ 2,381.08 in a checking account at the end of that year, and $ 2,900 which respondent determined was his living expenses for that year. We think the respondent's determination must be sustained. The record strongly indicates that petitioner made some sales during that year. During 1936 petitioner purchased some $ 9,000 to $ 10,000 worth of merchandise for resale. On his 1937 tax return, however, he showed an opening inventory for that year in the amount of $ 2,500. Assuming therefore that he purchased $ 9,000 worth of merchandise in 1936, his own accounting method shows that at least $ 6,500 worth of merchandise was disposed of during 1936. Petitioner attempted to reconcile those figures by saying that he did not keep all of his inventory inside his enclosure at Appalachia, that he had other places scattered about the Virginia countryside where he kept junk which he had purchased, and that he only reported *61 on his 1937 individual income tax return the merchandise or inventory on hand at the beginning of that year in the enclosure at Appalachia. Yet he also testified that he kept a record of his sales and purchases in two different books and that the figure of $ 2,500 was taken from those books by the insurance salesman in Appalachia who prepared certain of his returns for the years in question and that those books correctly reflected his business activities during 1936. That petitioner had at least one sale in that year was admitted at the hearing. He attempted to explain his many bank deposits in 1936, a great part of which were in odd amounts, by saying that they were from the money he brought with him from Brooklyn. When respondent asked why his first deposit was $ 388.98 instead of a round amount, petitioner stated that he had sold some "stuff" to a man on the road and took his check for it in the above amount. Then when he was asked to reconcile that statement with the one that he had no sales at all during 1936, he was unable to do so satisfactorily. Another indication of the fact that petitioner sold some of his merchandise in 1936 is the record of his bank deposits in the checking *62 account during that year. The facts show that during that period he made 28 deposits in a bank in Appalachia between August 20, 1936 and December 31, 1936, totaling $ 10,040.58, approximately half of which deposits were in odd amounts. The nature of those deposits was never satisfactorily explained at the hearing. In view of the above we conclude that petitioner made some sales during 1936 and that he has not overcome the prima facie correctness attaching to respondent's determination that he received income in the amount of $ 5,281.08 during that year. This brings us to issue (3): Was petitioner's failure to file a return for 1936 due to reasonable cause and not due to willful neglect? Section 291, Revenue Act of 1936. The burden of proof is on the petitioner to show that his failure to file a return was based on reasonable cause. Michael Downs, 7 T.C. 1053, 1060, affirmed 166 Fed. (2d) 504, cert. denied 334 U.S. 832. Petitioner sets forth as the cause for his failure to file a return the fact that he had no sales during that year. As we have pointed out above, however, the respondent's determination that he had sales during 1936 has not been *63 overcome. Hence, we conclude that respondent's determination of a 25 per cent penalty was proper. (4) Understatement of income for the years 1937 through 1943. The respondent has determined that petitioner has understated his income for the years 1937 through 1943 in the amounts set forth in our findings. The petitioner contends that respondent's method of computing his income "was mathematically and legally erroneous," that he maintained adequate books and records but that they were stolen in 1940 and on two or three other occasions subsequent to that time, and that when books are lost or destroyed their contents may be proved and established by competent secondary evidence, citing David Welsch, 2 B.T.A. 64. The only books of petitioner in evidence are those for 1941, 1942 and 1943 which are described in our findings. Obviously those books alone are not sufficient evidence from which to ascertain net income for tax purposes for the years 1941, 1942 and 1943, let alone for the period from 1937 through 1941. All the other books of record which petitioner contends he maintained were purportedly stolen or mutilated by thugs. We have found as a fact that there was a robbery *64 at his place of business in 1940. What was the exact nature of his books then is not ascertainable from the record. Petitioner testified there were other instances of breaking into his place of business and the destruction of records, but he did not attempt to prove this by statements of police as he did with respect to the robbery of 1940. Viewing the record as a whole, we must conclude that there were never adequate records kept by petitioner from which his taxable income could be accurately computed. The evidence as to the kind of books he kept is contradictory and indefinite. At one point in the record it was stated that his books from which the insurance salesman made his returns were check stubs and "some kind of a record from which he called off the sales" to him. Several times petitioner referred to expenses being kept in a "separate little book" in which he kept a record of his transactions. If the check stubs which he used to prepare his returns from 1937 through 1942 were like the check stubs in evidence, they were not sufficient to fix his business expenses at any definite amount. Hence, in the absence of any competent books or any satisfactory secondary evidence to prove *65 what was in his books, we think respondent acted properly in using another method to determine petitioner's income. See Max Cohen, 9 T.C. 1156, 1162, affirmed 176 Fed. (2d) 394, (July 26, 1949). Moreover, the record does not establish that respondent erred as to the method he used in computing petitioner's income. Kenney v. Commissioner, 111 Fed. (2d) 374; Gleckman v. United States, 80 Fed. (2d) 394, cert. denied 297 U.S. 709. We therefore conclude that respondent's determination as to the deficiencies determined for the years 1937 through 1943 must be sustained. (5) Fraud penalties. For each of the years 1936 through 1943 respondent determined fraud penalties against petitioner. On this issue the respondent has the burden of proof. Section 1112, Internal Revenue Code; Mitchell v. Commissioner, 118 Fed. (2d) 308. Fraud must be proved by clear and convincing evidence. Griffiths v. Commissioner, 50 Fed. (2d) 782; Frank A. Maddas, 40 B.T.A. 572. The failure of the taxpayer to overcome the presumptive correctness of the deficiency, as is true in the case *66 at bar, does not create a presumption of fraud. Both parties in a proceeding of this nature may fail through inadequate proof on the several issues. L. Schepp Co., 25 B.T.A. 419, 437. In this case we do not believe that the record as a whole supports a holding that petitioner was guilty of intentional wrongdoing, or that petitioner willfully acted contrary to the truth within his knowledge and made deliberate false statements on his return for the purpose of evading tax. See Mitchell v. Commissioner, supra; L. Schepp Co., supra, page 438. Among the considerations which has led us to this conclusion is the illiteracy of petitioner, a fact which respondent conceded in his brief. Although petitioner apparently was successful in his business, any one reading the record could come to no other conclusion than that petitioner has had little or no education and knew almost nothing of proper accounting or bookkeeping methods. As to the year 1936 respondent, in his attempt to prove that petitioner willfully and with fraudulent intent to evade taxes failed to file a return for 1936, states that petitioner brought with him to Appalachia only $ 6,000 and *67 that his several expenditures in that year alone exceeded $ 15,000. He emphasizes that this indicates there were some sales in that year. On the other hand petitioner testified that he had $ 25,000 when he left Brooklyn and although he brought only $ 6,000, it may well be that he used some of the remainder of the $ 25,000 later in 1936 for the purchase of merchandise and equipment in question. It is true that petitioner admitted at least one sale in 1936 and that there are other indications of sales in that year; however, there is not sufficient proof before us to conclude that petitioner's failure to file a return in 1936 was fraudulent for the purpose of evading tax. In addition, respondent makes mention of the lack of proper books for all the years involved. Although it does appear that petitioner's accounting method was inadequate properly to reflect his income, we think it doubtful that the record would sustain a holding that he deliberately tampered with his books or willfully kept insufficient records so as not to disclose fully his income for tax purposes during the years involved. See A. C. Griffiths, 11 B.T.A. 565. The insurance salesman who prepared his returns *68 was never asked to distort the facts. True, petitioner's returns did not reflect his interest payments for some of the years involved and in 1940 he received certain dividends which apparently were not reported. But again we do not believe the record as a whole supports a holding that petitioner deliberately and willfully withheld these items for the purpose of evading tax. We think the record supports a finding that petitioner was negligent in failing to file a return for 1936, in omitting certain items from his income in certain years, and generally in his keeping of books, but those are not sufficient to establish fraud. See Mitchel v. Commissioner, supra, page 310. We therefore conclude that respondent has not proved fraud as to any of the years involved. Decision will be entered under Rule 50. Footnotes
1. On the pleadings petitioner raised the issue of statute of limitation only as to the years 1937 through 1940.↩