Estate of Abe M. Schwartz, Estelle R. Schwartz, Administratrix, and Estelle R. Schwartz, Individually v. Commissioner. Estate of Abe M. Schwartz, Estelle R. Schwartz, Administratrix v. Commissioner.
Estate of Schwartz v. Commissioner
Docket Nos. 66544-66545.
United States Tax Court
T.C. Memo 1960-133; 1960 Tax Ct. Memo LEXIS 152; 19 T.C.M. (CCH) 687; T.C.M. (RIA) 60133; June 27, 1960
Raphael P. Koenig, Esq., for the petitioners, 120 Broadway, New York, N. Y. John A. Dunkel, Esq., for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: The respondent determined deficiencies in petitioners' income tax and additions to tax under section 293(b) [1] for the years and in the amounts as follows: Addition
Year
Deficiency
to Tax
1947
$7,057.40
$3,604.50
1948
540.54
270.27
The issues for decision are: (1) Whether during 1947 and 1948 the decedent, Abe M. Schwartz, received taxable income in the respective amount of $14,400 and $2,250 in the form of illegal bonuses *153 received from prospective tenants of apartments managed by him; and (2) Whether any part of any deficiency for each of the years 1947 and 1948 was due to fraud with intent to evade tax. Findings of Fact Some of the facts are stipulated and are hereby found as stipulated. Petitioner Estelle R. Schwartz is the widow of the decedent Abe M. Schwartz, hereinafter referred to either as the decedent or as Schwartz, and the duly appointed administratrix of his estate. The decedent died intestate in the state of Florida in August of 1957. The decedent's income tax return for 1947 was filed with the collector for the third district, New York. The return disclosed a gross income of $15,877.25 received in the form of salary from Joseph Schwartz and Westport Management Corp. and partnership income from the partnership, Joseph Schwartz and Son. The joint return of decedent and Estelle R. Schwartz for 1948 was filed with the collector for the third district, New York. The return disclosed a gross income of $14,643.85 received in the form of salary from Control Realty Corp. and Joseph Schwartz and partnership income from the partnership, Joseph Schwartz and Son. For the year 1947, respondent *154 determined that the decedent received additional income in the amount of $14,400 in the form of bonuses which he did not report on his income tax return for that year. The amount of $14,400 was broken down in respondent's Answer in docket No. 66545 as follows: (a) Directly from Prospective Tenants.
Location of
Apartment (All in
Date
Prospective Tenant
New York, New York)
Amount
6/30/47
Richard Robinson
245 West 74th Street
$ 350
9/26/47
Sais Merenschensha
50 Manhattan Avenue
1,5500
10/31/47
Daisy Fischer (Herzog)
245 West 74th Street
1,200
11/47
Murray Davidson
29 West 65th Street
250
$ 3,300
(b) From prospective tenants through Gladys Siegal d/b/a Gothamrealty
Co., 100 West 57th Street, New York, New York, acting as inter-
mediary, agent or sub-agent.
1/24/47
David Mossberg
29 West 65th Street
400
3/25/47
Richard Fox
50 Manhattan Avenue
750
6/10/47
Herman Tauber
29 West 65th Street
900
8/47
Miriam Eolis
215 West 78th Street
900
8 & 9/47
Hannah Kaplan et al.
420 Central Park West
850
8 & 9/47
Hannah Kaplan and Jerome Kaplan
245 West 74th Street
900
12/26/47
David Mossberg
29 West 65th Street
1,000
$ 5,700
(c) From prospective tenants through Stephen J. Strauss Real Estate
Agency, 210 West 79th Street, New York, New York, acting as inter-
mediary, agent or sub-agent.
6/15/47
Herman Liwerant
29 West 65th Street
750
9/26/47
Frederick M. Hammerschlag
125 West 96th Street
750
10/47
Henry F. Herzl
420 Central Park West
650
11 & 12/47
Ella Sedel & Walter Steppacher
29 West 65th Street
1,000
12/47
Sidney Rosendorf
245 West 74th Street
500
$ 3,650
(d) From prospective tenants through Robert D. Fielding (former office
manager of Stephen J. Strauss Real Estate Agency) acting as inter-
mediary, agent or sub-agent.
11/47
Yvette Israel
245 West 74th Street
1,750
$ 1,750
Total
$14,400
*155 For the taxable year 1948 respondent determined that the decedent received additional income in the amount of $2,250 in the form of bonuses which was not reported on the joint income tax return of decedent and Estelle R. Schwartz for that year. The amount of $2,250 was broken down in respondent's Answer in docket No. 66544 as follows: (a) From prospective tenants through Gladys Siegal d/b/a Gothamrealty
Co., 100 West 57th Street, New York, New York, acting as inter-
mediary, agent or sub-agent.
Location of
Apartment (All in
Date
Prospective Tenant
New York, New York)
Amount
3/ 8/48
Vera Jane Cook
245 West 74th Street
$1,000
$ 1,000
(b) From prospective tenants through Stephen J. Strauss Real Estate
Agency, 210 West 79th Street, New York, New York, acting as inter-
mediary, agent or sub-agent.
1/ 5/48
Stella & Robert Karen
29 West 65th Street
700
2/48
Ralph Malisdorf
125 West 96th Street
550
$ 1,250
Total
$ 2,250
The decedent was born in New York, New York, in 1904. He attended New York University for three years. During 1947 and 1948, Schwartz was engaged in the real estate management *156 business as an employee for his father, Joseph Schwartz; for the partnership of Joseph Schwartz and Son; for the Westport Management Corporation; and for the Control Realty Corporation. These firms were all located at 570 Seventh Avenue, New York, New York. During 1947 and 1948, the decedent's father, Joseph Schwartz, was owner of or owned the stock of corporations which owned the following apartment buildings located in New York City: 245
West 74th Street
50
Manhattan Avenue
29
West 65th Street
215
West 78th Street
420
Central Park West
125
West 96th Street The decedent's duties as an employee included interviewing tenants for apartments located in these buildings and executing leases on behalf of the owner. During 1947 and 1948, apartments were very scarce and difficult for tenants to obtain in New York City. On May 21, 1948, a superseding information containing eight counts was filed against petitioner in the Court of General Sessions of the County of New York, New York. The information charged that during the taxable years 1947 and 1948 the decedent committed the crimes of "Excessive Charges in Connection with Rental Agreements". [2]
*157 Count three of the information charged as follows: "The said defendant, on or about September 26, 1947, at the City and in the County of New York, directly and indirectly, solicited, requested, demanded, received, collected and accepted from one Saia Merenschensha, from one Emil Ekstein and from one Nelli Ekstein, and agreed to receive, collect and accept from said Saia Merenschensha, said Emil Ekstein and said Nelli Ekstein, a certain donation, gratuity, bonus, emolument, gift, payment and thing of value, to wit, the sum of $1,500 in currency of the United States of America, in addition to lawful charges, upon the representation, understanding and statement that compliance with such request and demand would facilitate, influence and procure an advantage for the said Emil Ekstein and the said Nelli Ekstein over others in entering into an agreement for the lease and rental of real property, to wit, an apartment at premises 50 Manhattan Avenue, City of New York, County of New York, and for the use and occupation thereof." Count four of the information charged as follows: "The said defendant, on or about the 31st of October, 1947, at the City and in the County of New York, directly *158 and indirectly, solicited, requested, demanded, received, collected and accepted from one Daisy Fischer, from one Alice Herzog and from one Dragutin Herzog, and agreed to receive, collect and accept from said Daisy Fischer, said Alice Herzog and said Dragutin Herzog, a certain donation, gratuity, bonus, emolument, gift, payment and thing of value, to wit, the sum of $1,200 in currency of the United States of America, in addition to lawful charges, upon the representation, understanding and statement that compliance with such request and demand would facilitate, influence and procure an advantage for the said Alice Herzog and the said Dragutin Herzog over others in entering into an agreement for the lease and rental of real property, to wit, an apartment at premises 245 West 74th Street, City of New York, County of New York, and for the use and occupation thereof." Count eight of the information charged as follows: "The said defendant, on or about June 30, 1947, at the City and in the County of New York, directly and indirectly, solicited, requested, demanded, received, collected and accepted from one Richard Robinson, and agreed to receive, collect and accept from said Richard *159 Robinson, a certain donation, gratuity, bonus, emolument, gift, payment and thing of value, to wit, $350 in currency of the United States of America, in addition to lawful charges, upon the representation, understanding and statement that compliance with such request and demand would facilitate, influence and procure an advantage for one Sandor Mark over others in entering into an agreement for the lease and rental of real property, to wit, an apartment at premises 245 West 74th Street, City of New York, County of New York, and for the use and occupation thereof." On January 12, 1949, the decedent pleaded guilty to the entire information referred to above. On February 2, 1949, he was sentenced to the New York City Penitentiary for an indeterminate period not to exceed three years on the first count and was fined $500 or 60 days on each of the remaining seven counts. Subsequent to the filing of the information against the decedent, numerous claims were filed against him by tenants in various apartment houses. In most instances litigation was instituted. These claims were settled by the repayment of certain amounts to the tenants. The following schedule shows amounts repaid to tenants *160 by the decedent: Address
Date Repaid
Name
(New York, New York)
Amount
1/19/49
Richard Robinson
245 West 74th St.
$ 350
1/20/49
Dragutin & Alice Herzog
245 West 74th St.
1,200
1/20/49
Saia Merenschensha
50 Manhattan Ave.
1,650
1/21/49
Irving & Yvette Israel
245 West 74th St.
1,000
8/18/49
Murray Davidson
29 West 65th St.
250
8/24/49
David Mossberg
29 West 65th St.
750
1/ 5/50
Herman Liwerant
29 West 65th St.
1,025
3/31/50
Walter Steppacher
29 West 65th St.
1,500
1/ 5/50
Stella & Robert Karen
29 West 65th St.
1,025
In addition to the previous schedule of repayments further repayments of similar nature were made as follows: Date Repaid
Name
Amount
1/18/49
George Wernbacher
$100
1/19/49
Jerome D. Kramer
100
1/19/49
Lawrence Goldstein
400
During the year 1947, Alice Herzog obtained an apartment located at 245 West 74th Street, one of the apartment buildings owned by decedent's father. To obtain the apartment, she called upon the decedent at his office. Schwartz first advised her that there were no apartments available. Later she tried again and was finally successful. In order to obtain the *161 apartment, she was required to pay the amount of $1,200, and she placed that amount in cash in an envelope and delivered it to the superintendent at 245 W. 74th Street. She told the superintendent that the envelope was for the decedent. The amount of $1,200 was paid by Alice Herzog during the year 1947. During the year 1947, David Mossberg, a dentist practising in New York City, obtained apartment 3-J at 29 West 65th Street, New York, New York, another building owned by decedent's father. In order to obtain this apartment Mossberg was required to pay and did pay the amount of $500 to Gladys Siegal at her request. During the same year 1947, Mossberg moved within the building at 29 West 65th Street to apartment 5-D. In order to obtain apartment 5-D, he was required to pay and did pay the amount of $1,000 to Gladys Siegal at her request. Of the total amount of $1,500 paid by Mossberg, one-half or $750, was repaid to him by the decedent. During the year 1947, Miriam Eolis Kassel, a certified public accountant practising in New York City, obtained an apartment within the building located at 215 West 78th Street, a building owned by decedent's father. In order to obtain this apartment, *162 she was required to pay and did pay an amount of money, between $500 and $1,000, to Gladys Siegal at the latter's request. The payment was made at the time she secured the apartment. No amount of the payment was ever refunded to her. During the years 1947 and 1948, Gladys Siegal Mills (also known as Gladys Siegal) was engaged in business in New York City as a real estate broker under the name "Gotham Realty". She sometimes acted as agent for apartment owners in connection with obtaining tenants for apartments. At other times she acted as agent for tenants in securing apartments for them. For these various services she received fees. If she were acting for a tenant, the fee usually amounted to approximately one month's rent. During these years many people would come to her office trying to find apartments. She, in turn, would contact as many owners as she possibly could in an effort to locate apartments for them. During these years, she knew that the decedent was in charge of renting apartments in a number of buildings and was instrumental in obtaining tenants for his apartments. On May 21, 1948, an information containing eleven counts was filed against Gladys Siegal in the Court *163 of General Sessions of the County of New York, New York. The information charged that during the taxable years 1947 and 1948 Gladys Siegal committed the crimes of "Excessive Charges in Connection with Rental Agreements". Count one of the information charged as follows: "The said defendant, on or about January 24, 1947, at the City of New York, in the County of New York, directly and indirectly, solicited, requested, demanded, received, collected and accepted from one David Mossberg, and agreed to receive, collect and accept from said David Mossberg, a certain donation, gratuity, bonus, emolument, gift, payment and thing of value, to wit, the sum of $500 in currency of the United States of America, in addition to lawful charges, upon the representation, understanding and statement that compliance with such request and demand would facilitate, influence and procure an advantage for the said David Mossberg over others in entering into an agreement for the lease and rental of real property, to wit, an apartment at premises 29 West 65th Street, City and County of New York, and for the use and occupation thereof." Count two of the information charged as follows: "The said defendant, *164 on or about March 25, 1947, at the City of New York, in the County of New York, directly and indirectly, solicited, requested, demanded, received, collected and accepted from one Richard Fox, and agreed to receive, collect and accept from said Richard Fox, a certain donation, gratuity, bonus, emolument, gift, payment and thing of value, to wit, the sum of $750 in currency of the United States of America, in addition to lawful charges, upon the representation, understanding and statement that compliance with such request and demand would facilitate, influence and procure an advantage for the said Richard Fox over others in entering into an agreement for the lease and rental of real property, to wit, an apartment at premises 50 Manhattan Avenue, City and County of New York, and for the use and occupation thereof." Count three of the information charged as follows: "The said defendant, on or about June 10, 1947, at the City of New York, in the County of New York, directly and indirectly, solicited, requested, demanded, received, collected and accepted from one Herman Tauber, and agreed to receive, collect and accept from said Herman Tauber, a certain donation, gratuity, bonus, emolument, *165 gift, payment and thing of value, to wit, the sum of $1,000 in currency of the United States of America, in addition to lawful charges, upon the representation, understanding and statement that compliance with such request and demand would facilitate, influence and procure an advantage for the said Herman Tauber over others in entering into an agreement for the lease and rental of real property, to wit, an apartment at premises 29 West 65th Street, City and County of New York, and for the use and occupation thereof." Count four of the information charged as follows: "The said defendant, in or about the month of August, 1947, at the City of New York, in the County of New York, directly and indirectly, solicited, requested, demanded, received, collected and accepted from one Miriam Eolis, and agreed to receive, collect and accept from said Miriam Eolis, a certain donation, gratuity, bonus, emolument, gift, payment and thing of value, to wit, the sum of $1,000 in currency of the United States of America, in addition to lawful charges, upon the representation, understanding and statement that compliance with such request and demand would facilitate, influence and procure an advantage *166 for the said Miriam Eolis over others in entering into an agreement for the lease and rental of real property, to wit, an apartment at premises 215 West 78th Street, City and County of New York, and for the use and occupation thereof." Count six of the information charged as follows: "The said defendant, in or about the months of August and September, 1947, at the City of New York, in the County of New York, directly and indirectly, solicited, requested, demanded, received, collected and accepted from one Hannah Kaplan and Jerome Kaplan, and agreed to receive, collect and accept from said Hannah Kaplan and Jerome Kaplan, a certain donation, gratuity, bonus, emolument, gift, payment and thing of value, to wit, the sum of $1,000 in currency of the United States of America, in addition to lawful charges, upon the representation, understanding and statement that compliance with such request and demand would facilitate, influence and procure an advantage for the said Hannah Kaplan and Jerome Kaplan over others in entering into an agreement for the lease and rental of real property, to wit, an apartment at premises 245 West 74th Street, City and County of New York, and for the use and *167 occupation thereof." Count seven of the information charged as follows: "The said defendant, on or about December 26, 1947, at the City of New York, in the County of New York, directly and indirectly, solicited, requested, demanded, received, collected and accepted from one David Mossberg, and agreed to receive, collect and accept from said David Mossberg, a certain donation, gratuity, bonus, emolument, gift, payment and thing of value, to wit, the sum of $1,000 in currency of the United States of America, in addition to lawful charges, upon the representation, understanding and statement that compliance with such request and demand would facilitate, influence and procure an advantage for the said David Mossberg over others in entering into an agreement for the lease and rental of real property, to wit, an apartment at premises 29 West 65th Street, City and County of New York, and for the use and occupation thereof." Count eight of the information charged as follows: "The said defendant, on or about March 8, 1948, at the City of New York, in the County of New York, directly and indirectly, solicited, requested, demanded, received, collected and accepted from one Vera Jane Cook, *168 and agreed to receive, collect and accept from said Vera Jane Cook, a certain donation, gratuity, bonus, emolument, gift, payment and thing of value, to wit, the sum of $2,600 in currency of the United States of America, in addition to lawful charges, upon the representation, understanding and statement that compliance with such request and demand would facilitate, influence, and procure an advantage for the said Vera Jane Cook over others in entering into an agreement for the lease and rental of real property, to wit, an apartment at premises 245 West 74th Street, City and County of New York, and for the use and occupation thereof." On June 8, 1948, Gladys Siegal pleaded guilty to each count of the information. Whatever monies Gladys Siegal received from prospective tenants of buildings managed by him, she turned over to the decedent. The only amounts she ever kept were commissions for her services or a finder's fee of approximately one month's rent. During the year 1947 Herman Liwerant, a merchant of New York City, obtained an apartment located in the building at 29 West 65th Street, New York, a building owned by decedent's father. Liwerant was required to pay about $700 in *169 order to secure this apartment. This amount was paid at the request of an agent named Strauss at the time he obtained his lease. Part was paid in cash and part by check. During the year 1947, Frederick M. Hammerschlag, a salesman of New York City, obtained an apartment in the building located at 125 West 96th Street, New York, a building owned by decedent's father. In order to obtain this apartment, Hammerschlag was required to pay the amount of $750. This amount was paid to, and at the request of, Strauss. During the year 1948, Ralph Malisdorf, a fur operator of New York City, obtained an apartment located in the building at 125 West 96th Street. In order to obtain the apartment, Malisdorf, at Strauss' request, was required to pay the amount of $700. It was paid to an employee of Strauss at the time Malisdorf obtained his lease. During the years 1947 and 1948, the decedent received income in the respective amounts of $14,400 and $2,250 in the form of illegal bonuses from prospective tenants of apartments managed by him. He did not report these amounts on his income tax returns for 1947 and 1948. The deficiencies in income tax determined by the respondent for the taxable years *170 1947 and 1948 are due to fraud with intent to evade tax, and the decedent's income tax returns for those years were false and fraudulent with intent to evade tax. Opinion The petitioners introduced no evidence to refute the determination of deficiencies made by the respondent with respect to either 1947 or 1948. The burden of proof with respect to the deficiencies rests with the petitioners. Max Cohen, 9 T.C. 1156 (1947). The deficiency notices here involved were mailed January 24, 1947. However, neither petition raises any question concerning the statute of limitations, and the rule is well established that the statute of limitations will not be considered an issue unless affirmatively pleaded. R. G. Robinson, 12 T.C. 246 (1949); North American Coal Corporation, 28 B.T.A. 87, 831 (1933). The respondent's determination of deficiencies for 1947 and 1948 must be sustained. Aside from the failure to plead the statute of limitations, we have found as a fact that the 1947 and 1948 returns were false and fraudulent so that, under section 276 (a), the deficiencies may be assessed at any time. The petitioners contend that the respondent has *171 failed to establish fraud primarily because, according to petitioners, there is no evidence of the direct payment to Schwartz himself of the illegal bonuses. None of the several tenants who testified at the trial to the making of the payments in question testified that they made those payments to Schwartz. In most instances, they testified that the payments were made to Gladys Siegal. However, the latter, whose memory was generally hazy, was unable to recall turning over any such payments to Schwartz. Her testimony on this point was: "Whatever monies I received, I turned over to Mr. Schwartz. Whatever it involved. The only thing I may have kept was a commission or a finder's fee for approximately a month's rent or close to it." However, the above gap in the chain of proof is more apparent than real. We know that numerous payments of the type in question were made by prospective tenants in both 1947 and 1948; that the apartments for which they sought leases were in buildings owned or controlled by the decedent's father and managed by decedent; that the payments were required by persons acting as agents for Schwartz and were, in fact, made to those persons; that Schwartz plead guilty *172 to criminal charges of having received such payments; and that Schwartz repaid certain of these amounts. Mossberg testified that he had paid a total of $1,500 in excessive charges to Siegal, and that he received back one-half of that amount from Schwartz. The petition in Docket No. 66544 contains the following: "5. The facts upon which the petitioners rely as a basis for this proceeding are as follows: "(a) * * * Petitioner Abe M. Schwartz during the years 1947 and 1948 was employed as a managing agent of certain residential properties. A New York Statute, Section 965 of The Penal Law made it a crime to receive excessive charges in connection with rental agreements. Petitioner Abe M. Schwartz was accused in an information filed in the Court of Special Sessions in the County of New York of having received prohibited excessive charges in 8 instances. On February 2, 1949 he pleaded guilty to one count of the information and was sentenced to a prison term. Said count which was Count I of the information accused him of receiving the sale of a 1946 Oldsmobile automobile from a named individual to secure an apartment at a certain premises. The other counts of the information were dismissed. *173 At no time was there a determination, in connection with the criminal prosecution, of the actual amount of prohibited payments received by the petitioners. Petitioners denied receiving many of the alleged payments. Payments made by certain of the tenants were not made directly to the petitioners. Litigation was instituted by various tenants and except in those cases where the petitioners denied receipt of a prohibited payment, refunds were made by the petitioners. "(b) The alleged understatement of income includes sums of money which the petitioners denied having received. "(c) The money admittedly received by the petitioners in violation of Section 965 of The Penal Law of the State of New York did not constitute taxable income as a matter of law." The petition contains substantially identical language in Docket No. 66545. The admissions contained in the petitions, together with the evidence introduced at the trial, conclusively establish a pattern of excessive charges exacted by Schwartz, a pattern which began in 1947 and continued into 1948, the year in which the information was filed against him. These amounts were not reported on petitioners' tax returns for those years. *174 The receipts were of such magnitude and derived from such sources as to preclude the inference that they were omitted due to oversight. Estate of Joseph Nitto, 13 T.C. 858 (1949). We may reasonably infer that the fact that they were substantially smaller in 1948 was due to the filing of the information in May of that year. Petitioners point out that the doctrine of Commissioner v. Wilcox, 327 U.S. 404 (1946), was in effect during the years in question and maintain that, in failing to prove that Schwartz did not rely on that doctrine in the preparation of the 1947 and 1948 returns, respondent has failed to establish the requisite fraudulent intent. The doctrine of Commissioner v. Wilcox has no applicability to receipts which, as in the instant case, came to the taxpayer with the full knowledge of the prospective tenants. There was no misappropriation without the knowledge or participation of the owners. Estate of Joseph Nitto, supra; Wallace H. Petit, 10 T.C. 1253 (1948). Petitioners' argument is without merit, whether considered in connection with the respondent's deficiency determination or in connection with the respondent's *175 burden of proof of fraud. We are satisfied that the respondent has sustained his burden and have made our findings accordingly. Decisions will be entered for the respondent. Footnotes
1. All statutory references herein are to the Internal Revenue Code of 1939 unless otherwise specified.↩
2. Section 965 of the New York Penal Law provides as follows: § 965. Excessive charges in connection with rental agreements. Any person who shall, directly or indirectly, solicit, request, demand, receive, collect or accept from another, or who agrees to solicit, request, demand, receive, collect or accept from another, any donation, gratuity, bonus, emolument, gift, payment or thing of value, in addition to lawful charges, upon the representation, understanding or statement that compliance with such request or demand will facilitate, influence or procure an advantage over others in entering into an agreement, either oral or written, for the lease or rental of real property for any term or for the use or occupation thereof, or any person who shall refuse to enter into any such agreement unless he receives, directly or indirectly, any such donation, gratuity, bonus, emolument, gift, payment or thing of value, shall be guilty of a misdemeanor. Any person who, directly or indirectly, aids, abets, requests or authorizes any other person to violate any of the provisions of this section shall be guilty of a violation of the provisions of this section. Added L. 1946, c. 842, eff. April 17, 1946.↩