COHEN v. COMMISSIONER OF INTERNAL REVENUE.

CARNAHAN v. COMMISSIONER OF INTERNAL REVENUE.

COMEAUX v. COMMISSIONER OF INTERNAL REVENUE.

CLEMONS v. COMMISSIONER OF INTERNAL REVENUE.

POLK v. COMMISSIONER OF INTERNAL REVENUE.
Nos. 3816–3822.

United States Court of Appeals Tenth Circuit.
July 26, 1949.

William H. Quealy, Washington, D. C. (Harry C. Castor, Wichita, Kan., on the brief), for petitioners.

Harry Marselli, Washington, D. C. (Theron Lamar Caudle, Ellis N. Slack and Lee A. Jackson, Washington, D. C., on the brief), for respondent.

Before PHILLIPS, Chief Judge, and BRATTON and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

These several appeals, here on a consolidated record from the United States Tax Court, involve assessed deficiencies and fraud penalties against each of the petitioners for different years, between 1936 and 1944, for income allegedly derived from the illegal traffic in liquor, gambling and betting on horse races, outside the city limits of Wichita, in Sedgwick County, Kansas.

The assessments and penalties against each of the petitioners for the specified years were based upon the hypothesis that petitioners Comeaux, Clemons, Polk and others owned and operated establishments in Sedgwick County, Kansas, where liquor was sold, gambling conducted, and betting on horse races booked; that petitioners Cohen and Carnahan, acting in concert, afforded them protection against raids and arrests by state and county law enforcement officers for a percentage of the profits derived from the operation of the illicit businesses; and that each of the petitioners fraudulently failed to report accurately or truthfully all of the income derived from such illegal activities for the years in question to the extent of the assessed deficiencies.

On review, the Tax Court consolidated Cohen and Carnahan's cases for purposes of trial, over the objection of the parties. All of the cases were tried consecutively, and it was agreed that the records in the other cases, insofar as material and pertinent, might be considered as evidence in the consolidated cases. With immaterial modifications and adjustments, the Tax Court affirmed the Commissioner's determination in each case. See Cohen v. Commissioner, 9 T.C. 1156; Carnahan v. Commissioner, 9 T.C. 1206; Comeaux v. Commissioner, 10 T.C. 201.[1]

On appeal here, the petitioners Cohen and Carnahan complain of the consolidation of their cases, contending in effect that their tax liability being separate, and not governed by the same facts, it was prejudicial to each of them to have their cases tried and considered together. But the record shows that Cohen and Carnahan were associated together in the activities which gave rise to the deficiency assessments, and that much of the evidence introduced, both on behalf of the Commissioner and the petitioners, was competent in both cases. The question of consolidation therefore rested in the sound discretion of the Tax Court. See Skirvin v. Mesta, 10 Cir., 141 F.2d 668; United States v. Hauck, 2 Cir., 155 F.2d 141.

All of the petitioners seek to annul the respective decisions of the Tax Court on the grounds that the opinions do not sufficiently set forth a complete statement of the "findings and conclusions, as well as the reasons or basis therefor, upon all the material issues of fact, law * * *" as required by Section 8(b) of the Administrative Procedure Act, 60 Stat. 237, 5 U.S.C.A. § 1007(b). Without deciding whether the Tax Court of the United States is a "court" within the exclusionary meaning of Section 2(a) of the Act, 5 U.S.C.A. § 1001(a), we are convinced that Section 8(b) has no application to the procedure of the Tax Court in a proceedings of this kind. Kennedy Name Plate Co. v. Commissioner, 9 Cir., 170 F.2d 196. It may be said, however, that the decision of the Tax Court in each case is based upon extensive and detailed findings of fact and well reasoned conclusions. Its accompanying opin-

---

[1] The memorandum findings of fact and opinion of the Tax Court in the case of Fred D. Clemons and Ralph Leonard Polk are included in the record, but apparently were not officially reported.

ions are full and comprehensive treatments of the facts and every question presented for decision there and here.

### Numbers 3816 and 3817 Max Cohen

For the years 1936 to 1943, inclusive, the Commissioner determined deficiencies and penalties against Max Cohen in the aggregate sum of $148,080.11. The deficiencies were determined by resort to what the internal revenue agent chose to call the "excess cash expenditure" method, under which the agent assumed that Cohen was "broke" on January 1, 1936, and that all expenditures as reflected by the available books and records in excess of the amount the taxpayer is shown to have had available to spend from reported sources, constituted additional and unreported taxable income. In other words, the deficiencies were based upon the premise that the taxpayer was shown to have spent more money in each of the taxable years than his returns showed was available to him as income. Thus, for each succeeding year the Commissioner started with the cash carry-over, if any on hand, and added to that the ascertainable cash receipts. He then aggregated all cash expenditures, from which he deducted the sum of the cash on hand, and ascertained cash receipts to arrive at the additional unreported income for each of the years in question.

While conceding that the methods employed by the Commissioner are justified in cases where the income is from illegal sources and no records are kept, on which taxable income can be ascertained with accuracy, see Kenney v. Commissioner, 5 Cir., 111 F.2d 374, and cases cited, Cohen earnestly argues that adequate records were maintained by him for the taxable years in question, from which competent accountants computed his taxable income and prepared proper returns, on which he paid the tax; that since the Commissioner concedes that his returns for the years in question are in agreement with his available records, resort to the so-called excess cash expenditure method does not provide a proper basis for determination of deficiencies, and is unwarranted.

The Tax Court found, and the record shows, that in the year 1936, Cohen was engaged in the oil business, and that upon the advice of an attorney, an accountant set up double entry ledgers to record all of his oil transactions, and that these books were kept by the accountant, and his income and disbursements accurately recorded and reflected in his income tax returns. The record also shows that before and after 1936, Cohen received large sums of money from the operation of establishments in Sedgwick County, where liquor was sold, gambling conducted, and bets on horse races were booked. For these activities, he maintained no books or records, except daily work sheets, reflecting the total amount of the "take", with directions to his accountant concerning its apportionment to the joint adventurers, whose returns the same accountant also prepared. The income from these activities was reported on the tax returns as derived from "outside activities". No other books or records or explanation has ever been made available. As the Tax Court observed in respect to the deficiencies assessed for the years 1936 to 1939, inclusive, there was credible evidence that during these years, Cohen received large sums of money from night club operators and from various illegal enterprises, in addition to the sums reported from "outside activities" in his return for those years, and that since Cohen elected not to take the witness stand to refute or explain the testimony and evidence on which the Commissioner's determinations were based, the court must indulge in their presumptive correctness.

Cohen further contends that the Commissioner erroneously assumed that he was broke on January 1, 1936, as a basis for determining his taxable income for that year and succeeding years. He says in that connection that the Commissioner's determination and the Tax Court's approval flies in the face of uncontradicted testimony that he had substantial funds in the Fall of 1936. There was testimony to the effect that in November 1936, he had in his possession $37,500.00, and other testimony tending to show that he possessed large sums of money in cash at that time.

The taxpayer's returns for the years preceding 1936 did not reflect any income. In fact, he filed no returns for the years 1931 through 1935. The taxpayer did not choose to enlighten the court in that regard; the court was not convinced by the testimony, and we cannot say that its conclusion in that respect is clearly erroneous.

■ For the taxable year 1940, the Commissioner determined no excess cash expenditures, but Cohen complains of the disallowance of an item of $2,552.27, claimed as net loss carry-over. In its treatment of this item, the Tax Court stated that at the outset of the hearing, counsel for the petitioner abandoned any contention of error in the determinations for the taxable year 1940, except fraud, and observed that no proof was introduced specifically referring to that item; and that since the record was barren of proof in respect to the deficiency, it was presumptively correct and must therefore stand. The court accordingly approved the deficiency, and disapproved the fraud penalty for that year. We accept the Tax Court's version of the matter, and agree with its conclusions.

■ In respect to the deficiency for the year 1941, Cohen complains of the failure of the court to find that he borrowed the sum of $35,000.00 in cash from his mother-in-law, Mrs. Myrtle Hale, on or about September 1, 1941, and its consequent treatment of that sum as taxable income to him for that year. In rejecting as false, testimony tending to show that the loan was made to him for the purpose of purchasing oil properties, the Tax Court took into consideration the fact that although Cohen had a complete set of books and records for his oil business, there was no record on these books of the loan, or any other evidence of the debt; that it was not shown to have come into his bank account, and no mention of it had been made during the investigation of his income tax liability until the hearing before the Tax Court. The court also treated as significant the fact that the $35,000.00 claimed loan was almost exactly the amount of the excess cash expenditures of $36,-916.26, determined for the year 1941, and observed that Cohen, who "should know most about the matter" remained silent. Again we cannot say that the Tax Court, as the trier of the facts and judge of the credibility of the witnesses, arrived at an unwarranted conclusion.

■ During the taxable years 1941, 1942 and 1943, Cohen and Carnahan financed one Ray Watson in the operation of a "slot machine route", under an agreement that Watson would receive 25% of the profits accruing to the owners of the machines, and Cohen and Carnahan 75% until the capital investment was returned, after which the profits would be divided 50% to Watson and 50% jointly to Cohen and Carnahan. In his income tax returns for the years 1941, 1942 and 1943, Cohen reported 25% of the proceeds. The Commissioner increased it to 37½%, on the basis that Cohen and Carnahan received for the taxable years in question 75% of the income. It is admitted that Cohen and Carnahan received 75% of the income during all of these years, but Cohen contends that he is indebted to Watson for the difference and intends to pay him; that since Watson's testimony supports this contention and reported the 50% in his returns for these years, the Commissioner could not repudiate the arrangement and arbitrarily increase his income by that amount. The Tax Court sustained Cohen's contention for the year 1941, on the theory that he was entitled to a return of his investment, and sustained the Commissioner for the years 1942 and 1943, on the grounds that Cohen admittedly retained the money. It refused to give credence to the testimony that it was a debt to be repaid. We do not think the court's appraisal of the facts was clearly erroneous.

■ Cohen also attacks the determination of the Commissioner, approved by the Tax Court, of deficiencies based upon excess cash expenditures for the years 1941, 1942 and 1943, and particularly complains that the court failed to give consideration to an analysis of his income tax liability for these years prepared by an accounting firm from the same records and data used by the revenue agent in arriving at the

excess cash expenditures. A summary of this analysis, purporting to show that cash available to Cohen during the years was understated by the revenue agent in his report, was offered and received in evidence, and the accountant who prepared it was also interrogated in court concerning the adjustments forming the basis for the discrepancy. The record shows that the Tax Court gave consideration to this summary and the testimony of the accountant. There is nothing in the record to suggest that the Tax Court did not give full consideration to the proffered testimony. It chose to accept the Commissioner's determinations, and its decision, resting as it does upon competent proof, is controlling here.

■ Cohen complains that the Tax Court erroneously refused to allow the accountant who prepared the analysis of his income tax for the years 1941, 1942 and 1943, to substantiate his summary in detail, and also urges as reversible error the refusal of the Tax Court to grant a rehearing after findings and opinion for the same purpose. The record does not indicate that the Tax Court limited in any respect evidence offered on behalf of the petitioner. Instead, it afforded the parties every opportunity to offer any proof bearing upon the issue. The question whether the court should grant a rehearing for the purpose of hearing substantiating testimony was entirely within its discretion in these circumstances.

In sum, the evidence shows, without dispute, that Cohen and Carnahan derived large sums of money from establishments located in Sedgwick County, Kansas, openly engaged in selling liquor, conducting gambling games and slot machines, and accepting bets on horse racing. In his income tax return for 1941, Cohen reported from "outside activities" the sum of $58,002.56; for 1942 he reported $158,630.46, and for 1943 he reported $95,179.78, all directly attributable to the illicit enterprises conducted by petitioners Comeaux, Clemons, Polk and others. No books or records were available to substantiate these returns, except the daily work sheets handed to the accountant showing cash received, with directions for apportionment among the participants according to their syndicated shares. There was also evidence that during these years in question, Cohen received other substantial sums of money from other illicit sources, which he did not report in his income tax returns.

■ From this and other evidence of excess cash expenditures, the Commissioner determined the deficiencies for each of the years and assessed the penalties. After a full hearing, the Tax Court has, with modifications and adjustments, approved its assessments. Cohen elected to remain silent in the proceedings, and has pleaded nolo contendere to criminal charges for tax evasion for some of the years in question. While his failure to testify in his own behalf, and his plea of nolo contendere are no evidence tending to support the Commissioner's determinations and the Tax Court's approval thereof, they do tend to account for approximations where details might otherwise be filled in. It is sufficient to say that the Tax Court's decision rests upon the best available evidence, and we think it is sufficient. Stinnett v. United States, 4 Cir., 173 F.2d 129; Harris v. Commissioner, 4 Cir., 174 F.2d 70; Greenfield v. Commissioner, 4 Cir., 165 F.2d 318. See also Helvering v. Safe Deposit & Trust Co., 316 U.S. 56, 62 S.Ct. 925, 86 L.Ed. 1266, 139 A.L.R. 1513; Cohan v. Commissioner, 2 Cir., 39 F.2d 540, 543.

### Numbers 3818 and 3819
### Robert L. Carnahan

For the taxable years 1937 to 1944, inclusive, the Commissioner determined deficiencies and penalties against Carnahan in the aggregate amount of $146,410.52. Carnahan kept no books or records reflecting his income, except the work papers delivered to his accountant showing gross receipts from joint enterprises with Cohen. The Commissioner's determinations are based upon the theory that since, with noted exceptions, Carnahan was an equal partner with Cohen in the outside activities, their income from common sources was the same. The Commissioner accordingly set up the deficiencies as "income not reported" corresponding to "excess cash expenditures" in Cohen's case.

 Carnahan challenges this method of determination, but the evidence which supports the deficiencies in the Cohen case is equally applicable to him. His principal attack upon the deficiencies arises from the refusal of the Commissioner to allow as deductions personal gambling losses to the extent of partnership gains. Although Carnahan did not testify in his own behalf, he offered the testimony of others to the effect that during the taxable years in question, he sustained large gambling losses at different places over the country, and contended that these losses were deductible to the extent of his gains from the various gambling enterprises, from which he derived his unreported income. See Jennings v. Commissioner, 5 Cir., 110 F.2d 945. The Tax Court sustained the Commissioner's disallowance of these deductions, first, because it was of the opinion that neither Carnahan nor Cohen owned any interest in the gambling enterprises from which they derived the unreported gains. Rather, it was of the opinion that the income was for protection afforded the various gambling establishments against raid and arrest by county and state officers. In that respect, the court stated that "all inferences from the situation tend to support the testimony that no 'place' could operate in Sedgwick County without paying Cohen. To pay Cohen was to pay Carnahan." According to the undisputed testimony, Cohen bank-rolled and collected the percentages from some of the gambling establishments, while Carnahan bank-rolled and collected from others, but they regularly balanced accounts by payments to each other in cash. As against the contention of the taxpayer that the percentage paid to them from the gambling operations was for "bank-rolling" the games and standing all losses, the Tax Court observed that it was not likely that anyone operating a gambling establishment would pay as high as 75% of the lucrative earnings for the risk involved. Of course if Carnahan owned no interest in the gambling establishments, he could not deduct his personal gambling losses, to the extent of his gains from those sources.

And finally, the court refused to believe part of the testimony supporting the claimed losses. In so doing, it pointed out with respect to a claimed $25,000.00 gambling loss in 1942, that Carnahan merely called his auditor, advising him that he had just lost $25,000.00 gambling. The only supporting evidence of this loss was a letter from Carnahan to his accountant—Carnahan did not testify concerning it, or any other claimed losses. For any or all of the reasons assigned, we think the Tax Court correctly disallowed the claimed deductions.

### No. 3820 G. A. Comeaux

 The deficiencies and fraud penalties determined and assessed against Comeaux were based upon income from the operation of the Lawrence Commission Company, where wagers were taken on horse racing and other sporting events. In his returns for the years in question, Comeaux treated the amounts admittedly paid to Cohen and Carnahan as partnership income, and therefore not includable in his gross income. In his returns, however, Comeaux designated himself as sole owner. The Commissioner allocated the entire income from the establishment to Comeaux on the theory that the percentages admittedly paid to Cohen and Carnahan were for protection, and not for any proprietary interest in the business. The amounts are not in dispute, and it is agreed that while legitimate expenses incurred in an illegitimate business are deductible, amounts paid for protection are not legitimate business expenses. The Tax Court allowed certain claimed expenses incurred in the operation of the business, but sustained the Commission's disallowance of the amounts paid to Cohen and Carnahan, based upon its findings fully set forth in the Carnahan case, to the effect that Cohen and Carnahan set themselves up as overlords of the illegal gambling business in Sedgwick County, Kansas, and exacted tribute from all those who wished to engage in it.

The evidence shows, without dispute, that during the years in question, the outlying districts surrounding Wichita were infested with so-called night-clubs, where liquor was sold and gambling conducted, with only nominal interference

from law enforcement officers. It is certainly permissible to infer from this record that Cohen and Carnahan actually furnished the protection they offered, and that the income they received from the illicit businesses was in payment therefor.

### Number 3821 Fred D. Clemons

Beginning in 1940, through 1944, petitioner Clemons owned and operated what was known as the Overflow Club outside the city limits of Wichita. He sold liquor by the drink in the front end, and conducted gambling in the rear. The bank roll for the gambling was furnished by Carnahan, and he, on behalf of himself and Cohen, received a stipulated percentage of the winnings. In his income tax returns for the years 1940 to 1944, inclusive, Clemons did not include in his gross income amounts paid to Carnahan, on the theory that the gambling winnings represented partnership income. The Commissioner assessed deficiencies, claiming that all of the income accrued to Clemons as the owner of the establishment, and the amounts paid to Carnahan were nondeductible payments for protection. The Tax Court allowed the legitimate expenses for the operation of the business, but approved the deficiencies for the amounts paid to Carnahan and Cohen for the reason stated in the Carnahan and Comeaux cases, and its decision thereon is affirmed for the same reason.

### Number 3822 Ralph Leonard Polk

During the year 1940 through 1944, Ralph Leonard Polk operated what was known as the Canyon Supper Club in the outskirts of Wichita, where liquor was sold in the front end, and gambling conducted in the rear. Cohen furnished the bank roll for the gambling, and was paid a percentage of the winnings. The issues here are the same as those in the Comeaux and Clemons cases, and the Tax Court's decision approving the Commissioner's determinations, is based upon the same reason, and its decision is affirmed.

■ All of the deficiency assessments against all of the petitioners for the years 1936 through 1939, (and also 1940 for petitioner Comeaux) are admittedly

barred by the statute of limitations, unless the returns for those years were false and fraudulent, with the intent to evade taxes. If so, they are not barred. Each of the petitioners earnestly contend that the Commissioner has not sustained the burden of showing fraud. While the determinations of the Commissioner are presumptively correct, and the burden is on the taxpayer to disprove them, the burden is upon the Commissioner to show fraud, and such burden is not sustained by merely establishing a deficiency. See Greenfield v. Commissioner, 4 Cir., 165 F.2d 318; Harris v. Commissioner, 4 Cir., 174 F.2d 70; Snell Isle, Inc. v. Commissioner, 5 Cir., 90 F.2d 481. In accordance with this rule, and after a careful analysis of the facts in each case, the court concluded that with the exception of certain noted years, the returns had been fraudulently filed, with an intent to evade tax.

Without recounting the facts and circumstances, we are convinced that the Tax Court's findings in that respect are not clearly erroneous, and they must be sustained. The several decisions are affirmed.