W. M. Bottenfield v. Commissioner. William M. Bottenfield and Evelyn G. Bottenfield v. Commissioner.
Bottenfield v. Commissioner
Docket Nos. 71192, 71193.
United States Tax Court
T.C. Memo 1960-241; 1960 Tax Ct. Memo LEXIS 49; 19 T.C.M. (CCH) 1355; T.C.M. (RIA) 60241; November 16, 1960
*49 W. M. Bottenfield, pro se, R.D. #1, Box 162, Hollidaysburg, Pa. Frederick A. Levy, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion In these consolidated cases the Commissioner determined deficiencies in petitioners' income tax and additions to tax as follows: Additions to Tax, I.R.C. 1939
Income Tax
Sec.
Sec.
Year
Deficiency
Sec. 293(b)
294(d)(1)
294(d)(2)
Docket No. 71192
1947
$ 7,008.50
$3,504.25
$ 632.84
$421.89
Docket No. 71193
1948
$11,680.84
$5,840.42
$1,096.05
$730.69
1949
13,592.74
6,796.37
1,225.11
803.74
1950
14,552.28
7,276.14
1,313.85
875.90 The Commissioner has conceded the additions to tax under Section 294(d)(2) should not apply to the years 1947, 1948, and 1950. The issues are: (1) Did petitioner William M. Bottenfield understate his net income for the taxable years 1947 through 1950, and if so, in what amounts? (2) Is a part of each deficiency for the years 1947 through 1950 due to fraud with intent to evade tax? (3) Is the statute of limitations a bar to the deficiencies and additions to tax for the years 1947 through 1950? (4) Are petitioners liable for *50 the years 1947, 1948, and 1950 for additions to tax under Section 294(d)(1)(A) of the Internal Revenue Code of 1939 for failure to file declarations of estimated tax? (5) Are petitioners liable for the year 1949 for additions to tax under Section 294(d)(1)(B) of the Internal Revenue Code of 1939 for failure to make timely payments of their estimated tax? Findings of Fact William M. Bottenfield filed his 1947 income tax return, and he and his wife, Evelyn G. Bottenfield, filed joint income tax returns for each of the years 1948 through 1950 - all with the collector of internal revenue for the first district of Pennsylvania. Evelyn G. Bottenfield had no income for the years involved. William M. Bottenfield will hereinafter be referred to as petitioner. Petitioner was born in Phillipsburg, Pennsylvania, the oldest of nine children. He attended schools in Blair County, Pennsylvania, to the eighth grade, after which he started to work. He first worked in a milk plant in 1928. In 1932 he was employed by the Bell Telephone Company. Beginning in 1934 he worked as an electrician on railroad construction for some-what more than a year, and thereafter he was employed as an electrician by *51 the City of Altoona, Pennsylvania. He also worked after hours wiring houses and building private pole lines. In 1946 he started his own business as an electrical contractor in Altoona, Pennsylvania. In July 1948 he purchased a farm in Hollidaysburg, Pennsylvania, and thereafter used that farm as a base of operations for his electrical contracting business. During the tax years in question, 1947 through 1950, petitioner's principal income was derived from that business, a sole proprietorship. Petitioner began his electrical contracting business in 1946 on a small scale, with only one pick-up truck and only such tools as he was able to make or borrow. From the beginning, petitioner's principal business orders and contracts came from the Bell Telephone Company of Pennsylvania and the United Telephone Company of Pennsylvania. His work consisted of putting up new telephone lines, placing poles and anchors, trimming rights of way, and similar work for the telephone companies. Petitioner personally supervised and took part in these jobs. He hired whatever labor he needed, sometimes hiring day labor, on occasion finding it necessary to pay board and lodging for his workers. In addition to *52 the continuing work for the telephone companies, petitioner also took on smaller contracts, such as building power lines on private property or for coal mines and building flood light systems for school district football fields. Until 1949, petitioner did not attempt to keep any organized business records, although he did have a notebook containing some data. He was usually paid for his services by check, which he would normally deposit but sometimes would cash. Most of his labor and other business expenses were paid by check. In 1949 he began keeping a record of his receipts. When it came time to file petitioner's income tax return, petitioner used the services of a bookkeeper, Mark Neuhart, to assist him in filling out his returns in 1947 through 1950. Neuhart obtained information orally from the petitioner and then prepared the return for petitioner's signature. Neuhart did not audit or inspect any of petitioner's notes or records. In 1949 when Neuhart initially drafted the return on the basis of the figures supplied by the petitioner, his computations resulted in a small net business loss. Neuhart objected to the resulting figure, telling petitioner that "it didn't look good", *53 whereupon petitioner then remembered $4,600 of additional business receipts, and the return was finally prepared and filed to show a net business profit of $4,018.24. At the time the 1950 return was prepared, Neuhart "objected to the showing of the net profit [$3,611.51] on such a large gross [$166,615.33]", and petitioner replied to the effect that he would let the income tax people find it if it was there; the return was filed as prepared. In his individual income tax return for 1947 and in his joint income tax returns for 1948 through 1950, petitioner reported the following income, deductions, and tax: 1947
1948
1949
1950
Contracting Receipts
$68,696.00
$102,292.76
$139,195.00
$166,615.33
Contracting Expenses
65,786.93
97,486.07
135,176.76
163,003.82
Net Profit
$ 2,909.07
$ 4,806.69
$ 4,018.24
$ 3,611.51
Capital Gain
0
1,300.00
0
0
Adjusted Gross Income
$ 2,909.07
$ 6,106.69
$ 4,018.24
$ 3,611.51
Less Standard Deduction
610.66
Net Income
$ 5,496.03
Less Exemptions
3,000.00
Income Subject to Tax
$ 2,496.03
Income Tax
$ 23.00 *
$ 497.34
$ 103.00 *
$ 46.00 *
During these same *54 years, the petitioner's actual receipts for work performed for his two continuing business clients were as follows: 1947
1948
1949
1950
Bell Telephone Co.
$68,442.99
$102,285.39
$115,799.39
$102,489.09
United Telephone Co.
14,148.27
26,026.10
40,247.07
71,304.77
Totals
$82,591.26
$128,311.49
$156,046.46
$173,793.86
In 1947, petitioner received additional business income from the Everett Verterans Association in the amount of $1,875.36, from the Keystone Pipeline Company in the approximate amount of $13,000, and from the Williamsboro School District in the amount of $2,800. During 1948, petitioner received additional business income from the Everett Veterans Association in the amount of $3,153.94. During 1949 he received additional business income in the amount of approximately $10,000 from the Keystone Pipeline Company, and in the amount of approximately $4,800 from the Citizens Committee of Clayburg. During 1950 he received additional income in the amount of approximately $17,000 from the Keystone Pipeline Company. Sometime during the foregoing years petitioner also performed work for the Tuscarora Oil Company, the Windber Recreation *55 Association, Lakemont Park Citizens Association, and the Borough of Lewistown, Pennsylvania; his compensation for such work is not disclosed. During the years in question petitioner made the following bank deposits: 1947
1948
1949
1950
Central Trust Co., Altoona
$69,795.17
$133,135.41
$155,187.17
$171,922.78
First Nat. Bank, Altoona
5,485.10
Citizens Nat. Bank, Altoona
8,576.33
2,174.85
Totals
$75,280.27
$133,135.41
$163,763.50
$174,097.63
Petitioner borrowed funds during the same period, especially for the purpose of buying new trucks and equipment as his electrical contracting business expanded. Exclusive of his mortgage in the purchase of the Hollidaysburg farm in 1948, these loans amounted to approximately $8,000 in 1947, $23,000 in 1948, $6,500 in 1949, and $4,500 in 1950. Petitioner filed a financial statement with the First National Bank of Altoona on May 31, 1947 showing his then net worth at $16,000 to $18,000. On March 9, 1950, petitioner filed a financial statement with the Central Trust Company of Altoona showing his net worth to be $88,100. Petitioner received no gifts, inheritances, or tax-exempt income during 1947 *56 through 1950. Petitioner's three sons ran a small dairy business after the family moved to the Hollidaysburg farm in 1948. Petitioner spent approximately $22,000 in 1948 to purchase a herd of young dairy cattle and to repair and remodel the newly purchased farm. Petitioner's sons were all still in school at the time, and they would milk the cows before and after school and then sell the milk. The dairy operation of the farm during 1948, 1949, and 1950 did not prove profitable, but the petitioner considered his contributions to its upkeep well spent since the dairy operations kept his sons busy in a worthwhile endeavor. When petitioner was first contacted by the Internal Revenue Service in 1950 regarding his 1948 income tax return, he claimed he did no business with any company other than the Bell Telephone Company in 1948, except a few jobs for farmers. He stated he used the Form 1099 furnished to him by the Bell Telephone Company to arrive at his reported gross receipts. In fact, the petitioner's reported gross receipts for 1947 were within $254 of the amount he received from the Bell Telephone Company alone and in 1948 within $7.37. Starting in September of 1950, after the *57 petitioner realized his bank accounts were being examined by the Internal Revenue Service to verify the information contained on his past returns, petitioner changed his usual business practice of depositing his business receipts checks and began to cash them, instead. When an Internal Revenue agent told the petitioner he had noted this change, petitioner replied that the trouble with Bill Bottenfield was he didn't deal in cash enough. On March 16, 1954 the petitioner was indicted for wilfully attempting to evade his income tax for the years 1947 through 1950. On April 20, 1954, the petitioner entered a plea of not guilty. Subsequently on December 2, 1954, petitioner changed his plea to nolo contendere on two counts and the United States Attorney nolle prossed the other two counts. In changing his plea, petitioner was motivated at least in part by pressure from the companies for which he was then performing services to settle the matter. The petitioner was fined $7,500 on each of the two remaining counts, a total of $15,000, and placed on probation for three years. In signed protests filed with the Internal Revenue Service during further investigation of this case in 1955, petitioner *58 admitted gross contracting receipts and claimed alleged business expenses for 1947 through 1950 as follows: 1947
1948
1949
1950
Business Receipts
$85,987.43
$137,403.81
$179,514.08
$186,540.91
Business Expenses
71,074.37
105,754.67
148,221.59
154,374.34
Net Profit
$14,913.06
$ 31,649.14
$ 31,292.49
$ 32,166.57
In his notices of deficiency, the respondent determined that petitioner's actual income and expenses for the years in issue were as follows: 1947
1948
1949
1950
Gross Receipts
$86,205.32
$139,111.05
$180,440.26
$198,619.57
Less Expenses
62,952.49
96,206.61
130,820.35
148,401.65
Business Profit
$23,252.83
$ 42,904.44
$ 49,619.91
$ 50,217.92
Less Farm Loss
959.63
3,675.61
3,437.16
Net Profit
$23,252.83
$ 41,944.81
$ 45,944.30
$ 46,780.76
A part of each deficiency for the years 1947 through 1950 is due to fraud with intent to evade tax. For each of the taxable years 1947 through 1950, petitioner filed a false and fraudulent return with intent to evade tax. Opinion RAUM, Judge: The burden of proof in respect of fraud was upon the Government, whereas the burden in respect of *59 the basic deficiencies was upon petitioners. We have found that the Government discharged its burden, and are fully satisfied upon this record that the requisite fraud was shown for each of the years by clear and convincing evidence. The returns reported comparatively small amounts of net income, and almost trivial amounts of tax, considering the magnitude of petitioner's operations. His expenditures and increase in wealth over these years were wholly inconsistent with his reported net income; and we cannot believe that he honestly thought he was correctly reporting his income. Moreover, the evidence explicitly discloses that his business receipts were substantially understated in each of the returns. Although the evidence does not reveal the precise amount of net income for each of the years, it convincingly demonstrates that there were substantial amounts of net income omitted. Such omissions, considered in the context of this record, amply support the Commissioner's determination of fraud. Our finding in this respect requires us to approve the additions under Section 293(b), and the same finding disposes of the statute of limitations issue. As to the exact amount of the basic *60 deficiencies petitioner has presented to refute the Commissioner's determinations, nor has he shown that the additions to tax under Section 294(d) were improper. The burden in these respects was upon him, and we must therefore approve the deficiencies determined as modified by the Commissioner's concessions in relation to Section 294(d)(2). See Max Cohen, 9 T.C. 1156, 1163, affirmed, 176 F. 2d 394 (C.A. 10). Decisions will be entered under Rule 50. Footnotes
*. Tax Table Used↩