Edward A. Sieg and Gerald Chan Sieg v. Commissioner.
Sieg v. Commissioner
Docket No. 77421.
United States Tax Court
T.C. Memo 1961-88; 1961 Tax Ct. Memo LEXIS 262; 20 T.C.M. (CCH) 395; T.C.M. (RIA) 61088; March 29, 1961
*262 1. Held, petitioners are entitled to deduct net loss from inherited rental property even though will provided net rentals should be paid to petitioner's aunt for life if she needed it. Deductible expenditures determined. 2. Held, additions to tax under sec. 6653(a), I.R.C. 1954, not imposed. Paul A. Stein, Esq., Liberty Bank Bldg., Savannah, Ga., for the petitioners. Wallace M. Wright, Esq., for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined deficiencies in petitioners' income tax and addition to tax under section 6653(a) of the Internal Revenue Code *263 of 1954 for the taxable year 1955 in the amounts of $431 and $21.55, respectively, and for the taxable year 1956 in the amounts of $239 and $11.95, respectively. The deficiencies result from respondent's disallowance of certain rental expenses claimed by petitioners. The issues for decision are whether respondent erred in determining (1) that petitioners are not entitled to deduct a net loss from the rental of certain real estate inherited by Edward A. Sieg under the will of his mother which also gave petitioner's aunt the right to receive net rentals therefrom during her lifetime, (2) that certain expenses claimed by petitioners in connection with the rental of other property owned by them were personal expenditures and nondeductible, and (3) that the underpayments in tax were due to negligence or intentional disregard of rules and regulations. Findings of Fact Some of the facts are stipulated and are so found. Petitioners Edward A. Sieg and Gerald Chan Sieg were husband and wife and resided at 118 West Harris Street, Savannah, Georgia, during the taxable years 1955 and 1956. Petitioners filed joint income tax returns for those years with the district director of internal *264 revenue at Atlanta, Georgia. Petitioners reported income on their returns filed for the years 1955 and 1956 from the following sources in the amounts indicated (cents omitted): Item
1955
1956
Salary (Fine's, Inc.)
$3,510
$3,445
Profit from business (Secret
Service Detective Agency
25
75
Rental income (or loss)
Schedule G
(2,630)
(1,712)
Adjusted gross income re-
ported
$ 905
$1,807
The rental losses claimed by petitioners on their 1955 and 1956 returns were from property located at 128 West Jones Street and at 118 West Harris Street, both in the city of Savannah, Georgia, as follows: Gross rent
Depreci-
Other ex-
Net income
Description of property
received
ation
Repairs
penses
or (loss)
Year 1955
128 W. Jones St.
$1,123.25
$ 800.00
$900.00
$1,051.64
($1,628.39)
118 W. Harris St.
220.00
35.36
22.77
948.41
493.00
709.02
( 1,002.56)
Net loss reported from rental property
($2,630.95)
Year 1956
128 W. Jones St.
1,238.85
1,026.95
159.96
978.85
( 926.91)
118 W. Harris St.
397.50
527.27
52.10
603.56
( 785.43)
Net loss reported from rental property
($1,712.34)
*265 The gross rent reported by petitioners for the property at 118 West Harris Street for 1956 included $120 which was a contribution to the support of Anne Chung Chan, mother of Gerald Chan Sieg, rather than the payment of rent on behalf of Anne Chung Chan. The property located at 128 West Jones Street was owned by the mother of Edward A. Sieg, Maria Teresa Aguirre Sieg, who, upon her death, left a will which contained the following provisions relating to the property: Third: To my sons, Edward Sieg and B. George Sieg, I give, devise and bequeath my house at 128 West Jones Street, City of Savannah, Chatham County, State of Georgia; but they are not to sell said property as long as my sister, Elisa Aguirre de Bohorquez, and my mother, residing and under the care of my sister, Elisa Aguirre de Bohorquez, are living, and if they should need it, the rent of said house, after maintenance, taxes, etc., have been deducted, should go to them or either of them for as long as they need it. On December 23, 1954, B. George Sieg executed a quitclaim deed which conveyed his interest in the property located at 128 West Jones Street to his brother, Edward A. Sieg. This conveyance was specifically *266 made subject to the "right of our aunt, Elisa Aguirre de Bohorquez to receive all rents accruing from said property after maintenance, taxes, etc., have been deducted." On January 1, 1956, Elisa Aguirre de Bohorquez and Edward A. Sieg executed an agreement relating to the property located at 128 West Jones Street. This document was written in Spanish and the stipulated translation into English reads as follows: 1955-1956 RENEWAL OF AN AGREEMENT BETWEEN TESTAMENTARY HEIRS La Senora Elisa A. de Bohorquez and el Senor Edward A. Sieg for consideration made one to the other mutually resolve and accept rules for the clarification as follows: (1)This arrangement is renewed automatically on the first day of each year; it may be canceled by either party by notifying the other on the first day of the year, or if consent is mutual, at any time. (2) The sum which does not reach $588.00 the profits shall be given as interest to the Senor mentioned; and the sum which exceeds $588.00 is a payment of principal to the Senora mentioned; for the profits, consider the excess over $300.00 of maintenance cost and certain additional expenses of agent which appear annually in the complete report *267 of real estate agent of Senor Sieg. (3) In consideration of 7% interest on capital of $7,500.00 plus additional capital of $900.00, or a total capital of $8,400.00, or being a sum of interest in amount of $588.00 per year, the Senora Elisa A. de Bohorquez authorizes the Senor Sieg the title, use and benefits of all her rights to the capital in hands of the Senor Sieg by which the said Senora and the said Senor have mutually testamentary interests, the first as beneficiary and the second as title holder. (4)
Advances
Total
Net
to the
Receipts
Expenses
Profit
Senora
A
B
C
D
E
F
1954
$1,006.50
$300.00
$414.39
$292.21
($592.21)
$300.00
1955
1,123.25
300.00
408.03
415.22
( 515.22)
100.00
On March 30, 1956, Edward executed a deed which conveyed his interest in the property located at 128 West Jones Street to his wife. This deed was also subject to the right of Edward's aunt "to receive all rents accruing from said property after maintenance, taxes, etc., have been deducted, during her lifetime." Skeffington Realty Company, Savannah, Georgia, was rental agent for the property at 128 West Jones Street and remitted *268 net rentals from this property to Edward in the amounts of $200 for 1955 and $150 for 1956 and to Elisa Aguirre de Bohorquez in the amounts of $515.22 for the year 1955 and $500.43 for the year 1956. Petitioners reported the entire gross rentals from 128 West Jones Street in their returns for the years 1955 and 1956 and did not claim as deductions any part of the rents paid to Elisa Aguirre de Bohorquez. The property at 118 West Harris Street consisted of a 2-story house containing an apartment on each floor and in the basement. Petitioners occupied the first floor of this house during both of the years 1955 and 1956 as their personal residence and rented or held for rent the basement and second floor during both of the years 1955 and 1956. Petitioners' expenditures in connection with the property located at 118 West Harris Street in 1955 for services (in excess of $80), drayage, office expenses, and other expenses, totaling $1,183.68, were personal expenses. Two-thirds of the expenditures claimed by petitioners on their return for the year 1956 in connection with the property located at 118 West Harris Street were expenses incurred in managing, conserving, and maintaining property *269 held for the production of income, and the remaining one-third of those expenditures were personal. The underpayment of tax for the year 1955 was not due to negligence or intentional disregard of rules and regulations. Opinion The first issue is whether petitioners are entitled to deduct the net loss from the rental of the property at 128 West Jones Street. This does not involve the question whether the expenses which created the net loss were ordinary and necessary expenses of operating and maintaining property held for the production of income because respondent did not question the deductibility of the claimed expenses per se but only petitioners' right to the deduction. Nor does it involve a question of the deductibility of the rental income paid over to Edward's aunt, because petitioners included the entire gross rentals in income and did not claim a deduction for the amounts paid to Edward's aunt. Respondent disallowed the net loss from this property claimed on petitioners' returns for both 1955 and 1956 on the ground that Edward's aunt had a life interest in the property and Edward, as remainderman, was not entitled to the income or deductions attributable thereto. This *270 in turn depends on a construction of the will of Edward's mother and the agreement entered into between Edward and his aunt, which was reduced to writing on January 1, 1956. The third paragraph of the will related to this property and, as we interpret it, clearly devised the property in fee simple to Edward and his brother, [1] but restricted their right to sell the property during the lifetimes of decedent's mother and sister, and provided that the net rent from the property should go to them if, and as long as, they needed it. Whether the restriction on alienation was void under Georgia law, as claimed by petitioners, citing Stamey v. McGinnis, 145 Ga. 226, 88 S.E. 935 (1916), Crumpler v. Barfield & Wilson Co., 114 Ga. 570, 40 S.E. 808 (1902), and other Georgia cases, we need not decide because even if valid, we do not think this provision of the will created a life interest in the property itself in Edward's aunt. The will did not give the aunt any right to possess, occupy, or control the property. In our opinion, those rights were in Edward. All the aunt was given under the will was the right *271 to receive the rent, "after maintenance, taxes, etc., have been deducted," if and as long as she needed it. We construe this to create a charge against the property in the hands of Edward but not to create any interest in the property itself in the aunt. We are aware that section 113-805 of the Georgia Code Annotated provides that an unconditional gift of the entire income of property shall be construed into a gift of the property unless the provisions of the will require a more limited meaning. But here there was no gift of the entire income from the property which the aunt was to take in any event. Furthermore, the cases annotated under the above section of the Georgia Code, such as Armstrong Junior College Commission v. Livesey, 189 Ga. 825, 7 S.E. 2d 678 (1940), indicate that the provision applies where there has been no concurrent gift of the fee to someone else, rather than to a situation like is here present. And as said in Lawrence v. Smith, 213 Ga. 57, 96 S.E. 2d 579 (1957): In those instances where a gift, devise, or grant of income, rents, or profits of land is held to be a grant or devise of the land itself [cite omitted], an absolute, unconditional *272 grant of the rents or profits is a prerequisite to conveying an interest in the land, the theory upon which it is based being that to convey all that will or can ever come from the land is to convey the land both in law and in fact. * * * Section 113-822 of the Georgia Code Annotated recognizes that annuities, legacies, or debts may be made charges against lands by will and provides that they attach to the land and follow it in the hands of all persons. While the agreement entered into between Edward and his aunt on January 1, 1956, as translated by stipulation, is confusing, we think it does tend to support our conclusion. We doubt that it is sufficient to convey any interest the aunt may have had in the property itself to Edward, as suggested by petitioners, but it does appear to recognize Edward's ownership of the property subject only to the aunt's right to receive such net rentals as she needed. The agreement attempted to specify how the net rentals would be computed and what portion thereof the aunt would receive, any balance thereof apparently remaining with Edward. Certainly it could not be said that under either the will or the agreement the aunt would have been liable *273 for taxes, maintenance costs, or any other charges against the property. She had an interest in net rentals only, even though it appears she may have received more than this in these years. But Edward, as owner of the property, was entitled to receive the gross rentals and was chargeable with the maintenance of the property and is entitled to deduct the net loss on the property. Sec. 212, I.R.C. 1954. We hold for petitioners on this issue. The second issue is whether respondent erred in disallowing certain expenses for maid services, drayage, office expense, and other expense claimed as deductions by petitioners in connection with the rental of property at 118 West Harris Street. Respondent disallowed these specific expenses for the year 1955 on the ground that they were personal expenses and not deductible "even if properly substantiated." Respondent determined that only one-third of this property was rented or available for rent in 1956 and therefore allowed as deductions only one-third of the expenses in connection with this property claimed by petitioners on their returns for both 1955 and 1956, on the ground that the remaining two-thirds of the claimed *274 expenses were personal. Respondent's determinations on this issue are prima facie correct. Rule 32, Rules of Practice, Tax Court of the United States; Max Cohen, 9 T.C. 1156 (1947), affd. 176 F. 2d 394 (C.A. 10, 1949). The only evidence offered by either party on this issue was the testimony of petitioner. He testified that the property at 118 West Harris Street consisted of a 2-story rooming house, the first floor of which he occupied as his personal residence and the basement and second floor of which he rented or held for rent to others during both 1955 and 1956. His testimony gave some inference that the second floor apartment was not rented throughout the year 1956 but also indicated that he did not occupy it himself and that it was held for rent throughout the year. The deductions claimed on the returns for both years included utilities, insurance, taxes, interest on mortgage, repairs, and depreciation. The return for the year 1955 also claimed a deduction of $832 for "Services" while the return for the year 1956 claimed a deduction of $240 for "Domestic rental expense." Petitioners allocated one-third of the expenses in each year to personal expense *275 and claimed the remaining two-thirds as rental expense. Respondent did not change the allocation for 1955 but disallowed certain specific expenses as being personal,while for 1956 respondent did not disallow any specific expense but simply allocated two-thirds to personal expense and allowed one-third of the claimed expenses as rental expense. Respondent offered no evidence in support of his allocation for 1956. In this state of the record we find that petitioners have overcome the presumptive correctness of respondent's allocation of expenses for the year 1956 by Edward's testimony that two of the three apartments were rented or held for rent throughout the year 1956 and that the claimed expenses were necessary for the operation and maintenance of this property. The fact that one of the apartments may not have actually been rented for the entire year would make no difference if the expenditures were incurred in the management, conservation, or maintenance of property held for the production of income. Sec. 1.212-1(b), Income Tax Regs. We do not think petitioners were required to substantiate these expenditures because respondent did not question either *276 their payment or the reasonableness thereof. We hold that petitioners are entitled to deduct two-thirds of the rental expenses claimed for the year 1956 for the West Harris Street property. With respect to the rental expenses claimed for this property for the year 1955, respondent has disallowed specific items on the ground that even if substantiated they were personal. The only evidence presented by petitioners on these items was Edward's own testimony which was both confused and unconvincing and, in our opinion, failed either to substantiate the expenditures or to overcome the prima facie correctness of respondent's determination that they were personal expenses rather than expenses incurred in either a trade or business or with respect to property held for the production of income. We hold that that portion of the rental expenses disallowed by respondent for the year 1955, consisting of services, drayage, office expense, and other expense, totaling $1,183.68, is not deductible. The remaining issue is whether respondent erred in asserting the 5 percent addition to tax for negligence for the year 1955 under section 6653(a) of the 1954 Code. [2]Section 6653(a) provides in part: *277 If any part of any underpayment * * * of any tax * * * is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment. Respondent gave no reason in the notice of deficiency or in his pleadings why the addition to tax was determined. Nevertheless, the burden of proving that the imposition of this addition was erroneous rests upon petitioners. David Courtney, 28 T.C. 658 (1957). While Edward did not testify directly with reference to how his books were kept or how his return was prepared, respondent has not questioned the amount of the deductions. Petitioners' returns for both years were stipulated in evidence and statements attached to both returns attempt to explain in detail how the deductions were computed. While these statements contained such voluminous extraneous matter as to be both irritating and confusing, and which procedure we do not condone or approve, we think they do contain enough information to have apprised respondent of the basis for the claimed deductions and petitioners' reasons for claiming them. This, in our opinion, was sufficient *278 to overcome the presumptive correctness of respondent's determination and to indicate that the underpayment of tax was not due to negligence or intentional disregard of rules and regulations. The addition to tax is disapproved. Decision will be entered under Rule 50. Footnotes
1. Petitioner acquired his brother's interest in 1954.↩
2. In view of our conclusions above, there would be no deficiency in income tax or addition to tax for the year 1956.↩