Peter J. Marcello and Penny V. Marcello v. Commissioner.
Marcello v. Commissioner
Docket No. 2406-63.
United States Tax Court
T.C. Memo 1964-304; 1964 Tax Ct. Memo LEXIS 39; 23 T.C.M. (CCH) 1883; T.C.M. (RIA) 64304; November 19, 1964
deQuincy V. Sutton, Dixie Towers, Meridian, Miss., for the petitioners. Robert S. Leigh, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined a deficiency of $25,269.87 in the income tax of petitioners for the year 1959 and an addition to tax in the amount of $1,263.49. The principal issue for decision is whether petitioners understated their taxable income for the year 1959 and, if so, in what amount. A secondary issue is whether petitioners are liable for an addition to tax under the provisions of section 6653(a). [1]
Respondent concedes on brief that petitioners are entitled *40 to exclude from their 1959 income the amount of $4,250 which was previously included in income by respondent for that year as an expenditure for real estate determined to have been made out of undeposited business receipts. Findings of Fact Some of the facts have been stipulated orally by the parties and are hereby found accordingly. Peter J. and Penny V. Marcello are husband and wife, who during the year 1959 resided at 1024 O'Dwyer Place, New Orleans, Louisiana, and at 3008 Ridgeway Drive, Metairie, Louisiana. They filed their joint Federal income tax return for 1959 with the district director of internal revenue at New Orleans. Respondent determined a deficiency against petitioners for 1959 by using the bank deposits, plus reported gambling winnings and certain cash expenditures, less identified nonincome items. The adjustments made by respondent to petitioners' income are as follows: As
Increase or
Per Return
Corrected
(Decrease)
Taxable capital gain
$ 4,000.00
None
($ 4,000.00)
Winnings from gambling
8,150.00
$ 8,150.00
None
Bank deposits Hibernia National Bank (savings ac-
count)
10,000.00
10,000.00
Hibernia National Bank (checking account)
9,680.45
9,680.45
Metairie Savings Bank & Trust Co.
44,216.66
44,216.66
Expenditures made out of undeposited receipts
Feb. 12, 1959, purchase of lot
4,250.00
4,250.00
July 10, 1959, Nu Idea Furniture
200.00
200.00
Aug. 5, 1959, Grunewald
700.00
700.00
New Orleans Pools, Inc.
890.00
890.00
Totals
$12,150.00
$78,087.11
$65,937.11
Less: Nontaxable items
Transfer of funds
10,000.00
10,000.00
Refund of income tax to George S. & Minnie L.
Valentine
188.93
188.93
Check from Joseph Mancuso
4,000.00
4,000.00
Total nontaxable items
$14,188.93
$14,188.93
Adjusted gross income - increase
$12,150.00
$63,898.18
$51,748.18
*41 Bank deposits made in the names of petitioners with the Metairie Savings and Trust Company, New Orleans, Louisiana, for the year 1959 were as follows: Amount of
Allocated to
Date
Deposit
Currency
Checks
1959 Jan. 6
$ 1,500.00
$ 1,500.00
Jan. 9
570.00
$ 570.00
Jan. 23
1,000.00
1,000.00
Jan. 27
515.00
515.00
Apr. 21
3,400.00
3,400.00
May 22
389.33
200.00
188.93
.40
June 1
833.75
800.00
33.75
June 5
$ 1,430.00
$ 600.00
$ 50.00
750.00
10.00
10.00
10.00
June 9
73.45
73.45
June 12
1,000.00
1,000.00
June 9
1,155.13
700.00
228.63
136.50
30.00
50.00
10.00
July 3
8,000.00
8,000.00
July 14
3,500.00
2,575.00
900.00
25.00
July 24
15,300.00
5,300.00
10,000.00
Sept. 11
1,500.00
1,500.00
Oct. 2
50.00
50.00
Dec. 16
4,000.00
4,000.00
Total
$44,216.66
$26,625.00
$17,591.66
The bank deposits in the Hibernia National Bank totaling $9,680.45 were made to an account in the name of Jewelers Outlet. Both Frank Olivo and Peter J. Marcello were authorized to sign checks for withdrawals and only one signature was required. The account was *42 opened on Jnauary 12, 1959, and closed on May 29, 1959. Frank Olivo was the only person who actually signed checks. He also operated the business. Peter Marcello had some connection with the business because he obtained possession of the fixtures when the business closed and sold them for $2,500. There is no evidence that Peter Marcello made any deposits to such bank account or that he withdrew any funds from it. On or about July 24, 1959, Peter Marcello received a check for $10,000 from his brother, Joseph, which was deposited to Peter's account in the Metairie Savings Bank and Trust Company. Such amounts represented a loan from the bank to Joseph. The loan was repaid to the bank in September 1959. In September 1959 petitioners sold their O'Dwyer Place residence for $18,400 and immediately acquired their new residence at 3008 Ridgeway Drive for $37,000. Petitioners received net cash or credit of $9,039.46 on the sale of the O'Dwyer Place residence. The record does not disclose the disposition by petitioners of this net amount or how much down payment was made by them in purchasing their new residence. Penny V. Marcello drew a check to cash for $800 on the Metairie Savings & *43 Trust Company account on June 11, 1959. The check bears no endorsement. The record does not disclose what disposition was made of the proceeds of the check. Respondent did not treat the amount thereof as a nonincome item. On July 28, 1959, Peter Marcello gave his check for $5,100 to a firm of attorneys. The record does not disclose whether the proceeds of the check were ever deposited to petitioners' Metairie bank account or were used as sources of funds for making cash expenditures for assets. Respondent did not allow any part thereof as a nonincome item. On December 18, 1958, Peter Marcello received a check in the amount of $14,765 from Joseph Mancuso as part of the proceeds from the sale of the Latin Quarter. The check was payable to George S. Valentine, endorsed by him, and negotiated by Peter Marcello. It was paid on December 28, 1958, by the bank on which it was drawn. The record does not disclose whether petitioners had such amount on hand as of January 1, 1959, or whether the proceeds of the check were deposited in petitioners' bank accounts during 1959 or used as a source of funds for unexplained cash expenditures. On September 16, 1958, Peter Marcello sold the Ship's *44 Lounge to Leonard Mormando for $25,000 in cash. The record does not disclose whether petitioners had such amount or any part thereof on hand as of January 1, 1959, or whether the proceeds were deposited in petitioners' bank accounts during 1959 or used as a source of funds for unexplained cash expenditures. Peter Marcello paid in 1959 certain Federal, State, and City taxes pertaining to the 1958 operations of the Ship's Lounge and Latin Quarter in the total amount of $691.60. No credit was given to petitioners by respondent for such amount in 1959. During the year 1959 the petitioners had the following items of nontaxable income which were disallowed by respondent: Lot purchased
$ 4,250.00
Jewelers Outlet
9,680.45
Loan from Joseph Marcello
10,000.00
Taxes paid (Ship's Lounge
and Latin Quarter)
691.60
Petitioners understated their taxable income for the year 1959 in the total sum of $31,126.13. Such understatement was due to negligence. Opinion 1. Use of bank deposits method. It is our view that the respondent was justified in redetermining petitioners' incomes for 1959 by using the bank deposits, plus reported gambling winnings and cash expenditures, *45 less identified nonincome items. See section 446(b), Internal Revenue Code of 1954; Boyett v. Commissioner, 204 F. 2d 205 (C.A. 5, 1953), affirming a Memorandum Opinion of this Court; Max Cohen, 9 T.C. 1156 (1947), affd., 176 F. 2d 394 (C.A. 10, 1949). Indeed, petitioners do not contest the method selected by respondent, but "only his uses of that method" by contending that their income for the year 1959 was increased arbitrarily. We cannot agree. Respondent's concession that petitioners are entitled to a reduction in income of $4,250 for the lot purchased in 1958 does not by itself show that respondent's entire determination was wrong so as to relieve petitioners of their burden of proving that other items are also wrong. Anderson v. Commissioner, 250 F. 2d 242 (C.A. 5, 1957), affirming a Memorandum Opinion of this Court; Fada Gobins, 18 T.C. 1159 (1952), affd., 217 F. 2d 952 (C.A. 9, 1954); and Cefalu v. Commissioner, 276 F. 2d 122 (C.A. 5, 1960), affirming a Memorandum Opinion of this Court. Nor do our conclusion that respondent erred with respect to some other nonincome *46 items make the whole determination one which was arbitrarily contrived. 2. Burden of proof. The burden of proof clearly rests with petitioners to show that the deposits and expenditures did not represent income to them. Hoefle v. Commissioner, 114 F. 2d 713 (C.A. 6, 1940), affirming 37 B.T.A. 1334 (1938); Rule 32, Tax Court Rules of Practice.Petitioners attempted to establish error in respondent's determination through respondent's revenue agent who was called as a witness for them. Petitioners did not testify and, consequently, they remained quiet at their peril on several of the issues concerning the year 1959. There is a presumption, upon which respondent relies, that if the petitioners had testified and told the truth, such testimony would have been adverse to their contentions. Max Cohen, supra.We are unwilling to draw several inferences urged upon us by petitioners because of the insufficiency of proof. 3. Nonincome items. Respondent has conceded that $4,250 pertaining to the lot purchased by petitioners in 1958 should not have been included in their income for 1959. In addition, we have found as a fact that the total amount of *47 deposits ($9,680.45) in the Hibernia National Bank account of Jewelers Outlet is not taxable income to petitioners; that a deposit of $10,000 made in petitioners' account at the Metairie Savings Bank and Trust Company on July 24, 1959, was a loan from Joseph Marcello and does not constitute taxable income to them; and that Peter Marcello paid taxes of the Ship's Lounge and Latin Quarter totaling $691.60. 4. Alleged nonincome items. Petitioners reported gambling winnings of $8,150 in 1959. Respondent made no allowance against bank deposits, or expenditures for cash, for the reported gambling winnings. Petitioners contend that respondent should have given credit for the $8,150 against the income determination. We agree with respondent. This is not a doubling up of income under respondent's method of determining income. An automatic adjustment is not in order, particularly where there is no evidence that the $8,150 was used in whole or in part to make bank deposits or pay cash for assets. There is no evidence as to dates or amounts of winnings, no evidence that the winnings were earned periodically during 1959, no evidence as to where, when, or from whom the winnings were earned, and *48 no evidence as to the application of the funds by petitioners. On this record we are unable to determine whether the petitioners are entitled to an allowable credit. The matter is simply one of burden of proof and petitioners have presented no evidence. Therefore, we sustain respondent on this item. Next the petitioners press the point that respondent included in their gross income the proceeds of a check for $800 drawn to cash. The check bears no endorsement. The record fails to show whether Penny Marcello actually received the proceeds of the check or, if she did, where the proceeds were applied. She was the party in possession of the facts with respect to this item any yet she chose not to testify about the transaction. Under the circumstances we believe respondent was correct in not allowing a credit of $800 against petitioners' income. Petitioners also contend that they were not allowed a credit against their 1959 income for deposits totaling $1,550 from a check in the amount of $5,100 received by Peter Marcello on July 28, 1959. Here again, even if we were to accept hearsay allegations of fact, there is no evidence in the record showing the application of these funds by petitioners. *49 There is nothing to establish that these funds were used to make either bank deposits or cash expenditures. If, as now contended, such funds were received by Peter Marcello and were used by him to either make bank deposits or pay for assets, he should have taken the witness stand and testified as to these matters. But he chose not to do so. For failure of proof we sustain respondent on this item. Finally, we reject petitioners' assertion that they had cash on hand as of January 1, 1959, as a result of having received $14,765 on December 28, 1958, from the sale of the Latin Quarter and approximately $25,000 received in September 1958 from the sale of the Ship's Lounge. The inherent weakness in this position is that there is no direct testimony or evidence in this record to support it. Any finding by this Court of a cash hoard not deposited in banks would have to be based upon inference or speculation, and this we shall not do. Hoffman v. Commissioner, 298 F. 2d 784 (C.A. 3, 1962). There is no evidence to support findings that petitioners still had the amounts received from the sales of the Latin Quarter and Ship's Lounge in cash, not deposited in banks, as of January 1, 1959; *50 that such cash was periodically deposited in their bank accounts during 1959 or was used in part as a source of funds for unexplained cash expenditures added to 1959 income by respondent; or that petitioners did not have an equivalent amount of cash on hand, not deposited in banks, on December 31, 1959. 5. Addition to tax. Petitioners offered no evidence to show error in respondent's determination that they are liable under section 6653(a) for an addition to tax because their underpayment was due to negligence or intentional disregard of rules and regulations. The burden of proof on this issue rested with petitioners. They have failed to meet it. Moreover, it is our view that the record here affirmatively demonstrates the negligence of petitioners. They did not maintain accurate records of their cash transactions. They likewise failed to maintain adequate records of gambling winnings reported in 1959. Accordingly, we hold for respondent on this issue. This is the last of 13 cases involving members of the Marcello family. Tried in New Orleans in December 1963 and March 1964, these cases took 9 days and consumed some 50 hours in the courtroom. The transcript runs 1415 pages; 35 *51 persons testified; and 218 exhibits were admitted in evidence. Perhaps the quagmire of this record, loaded as it is with ambiguities, complexities, inconsistencies, obscurities, and non sequiturs, could have been avoided if all parties had made an effort, prior to trial, to comply with the requirements and spirit of Rule 31(b) of the Tax Court Rules of Practice relating to the stipulation of material facts. They did not, and the result is a confusing labyrinth of their own creation. We need only say in concluding that we have endeavored to find the facts as fairly and completely as the evidence permits, remembering all along the path what Justice Joseph Story said in his peom "Advice to a Young Lawyer": Press to the close with vigor, once begun, And leave, (how hard the task!), leave off when done. Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise noted.↩