Sadie Marcello et al. [1] v. Commissioner. Marcello v. Commissioner
Docket Nos. 83196-83198.
United States Tax Court
T.C. Memo 1964-302; 1964 Tax Ct. Memo LEXIS 37; 23 T.C.M. (CCH) 1870; T.C.M. (RIA) 64302; November 19, 1964
deQuincy V. Sutton, Dixie Towers, Meridian, Miss., for the petitioners. Robert S. Leigh, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined the following deficiencies in income taxes and addition to the tax: Addition to Tax
Docket
Sec. 294(d)(2),
Petitioner
Number
Year
Deficiency
I.R.C. 1939
Sadie Marcello
83196
1946
$4,402.90
1947
1,276.74
Vincent Marcello
83197
1946
4,488.38
1947
1,314.01
Sadie and Vincent Marcello
83198
1949
2,685.78
1950
6,681.70
$710.84
Petitioners did not contest at the trial that their distributive shares of taxable gains from Jefferson Music Company were understated by $908.06 and $1,244.16 on their income tax returns for the years 1946 and 1947, and *38 that they understated taxable capital gains for 1949 of $1,040.63 arising from a sale of land. The issues for decisions are: (1) Whether petitioners' distributive shares of net income of Jefferson Music Company, a partnership, were understated on their Federal income tax returns for the years 1946, 1947, 1949, and 1950; (2) whether petitioners realized additional income for the years 1946, 1947, 1949, and 1950 over that reported on their Federal income tax returns for such years; and (3) whether petitioners are liable for an addition to the tax of $710.84 for the year 1950 under section 294(d)(2), Internal Revenue Code of 1939, [2] for substantial under-estimation of estimated tax. Findings of Fact Some of the facts were stipulated by the parties orally into the record and are hereby found accordingly. Vincent and Sadie Marcello are husband and wife, who reside in Gretna, Louisiana. In early 1942, shortly after Vincent was emancipated, Louisa Marcello, Vincent's mother, sold him for $7,000 the business known as Jefferson Music Company (hereinafter sometimes called Jefferson). *39 The act of sale included the transfer of ownership of some 163 items of equipment. The principal office of Jefferson is now 335 Huey P. Long Avenue, Gretna, Louisiana. On September 22, 1942, Vincent granted his brother, Carlos Marcello, a power of attorney authorizing Carlos to act as agent and attorney in fact for Vincent in the business of Jefferson Music Company. As compensation for representing Vincent, the power of attorney provided that Carlos would receive one-half of all the profits that were to be produced by the coin-operated machines. Jefferson reported net income for each of the calendar years 1944 to 1950, inclusive, on United States partnership returns, Forms 1065, filed with the collector of internal revenue, New Orleans, Louisiana. The receipts, expenses, and net profits shown on the Federal partnership returns of Jefferson Music Company are as follows: 1946
1947
1949
1950
Collections
$117,011.26
$89,355.00
$96,775.00
$122,435.00
Rent
940.00
Total receipts
$117,011.26
$89,355.00
$96,775.00
$123,375.00
Expenses
65,845.03
50,740.97
58,847.44
61,902.83
Net profit
$ 51,166.23
$38,614.03
$37,927.56
$ 61,472.17
*40 The partners' shares of income and credits were reported on the partnership returns of income as follows: 1946
1947
1949
1950
Vincent Marcello
$ 25,583.11
$19,307.52
$18,963.78
$ 30,736.09
Carlos Marcello
25,583.12
19,307.51
18,963.78
30,736.08
Total
$ 51,166.23
$38,615.03
$37,927.56
$ 61,472.17
Consistent with the filing of the partnership returns for the years 1946 and 1947, Vincent and his wife, Sadie, filed with the collector of internal revenue, New Orleans, Louisiana, separate Federal income tax returns for the years 1946 and 1947 on the community property basis, each reporting one-half of Vincent's distributive shares of net income of Jefferson Music Company derived from the partnership returns. Consistent with the filing of the partnership returns of income for the years 1949 and 1950, Vincent and Sadie filed with the collector of internal revenue, New Orleans, Louisiana, joint returns for the years 1949 and 1950, reporting Vincent's 50 percent distributive shares of the net income derived from the partnership returns. Respondent determined that the books and records of Jefferson Music Company were inadequate for the verification *41 of the income and deductions reported on the partnership returns for the years 1946, 1947, 1949, and 1950. Therefore, respondent has resorted to the bank deposits - expenditures method of redetermining income of Jefferson for such years; has redetermined allowable business deductions, exclusive of depreciation for such years, by classifying check and cash disbursements; and has allowed depreciation deductions in connection with all business assets acquired during the years 1946 to 1950, inclusive. Under the method adopted by respondent in redetermining ordinary net income of Jefferson, he redetermined the distributive shares of Vincent in the ordinary net income of this business, as follows: Jefferson Music Co.
1946
1947
1949
1950
Gross income
$167,104.84
$131,817.52
$134,113.86
$165,561.22
Less expenses: Depreciation
13,744.92
26,134.79
29,215.56
35,381.59
Other expenses
71,243.02
61,347.24
63,188.45
66,554.41
Total expenses
$ 84,987.94
$ 87,482.03
$ 92,404.01
$101,936.00
Ordinary net income
$ 82,116.90
$ 44,335.49
$ 41,709.85
$ 63,625.22
50% share of Vincent Marcello
41,058.45
22,167.75
20,854.93
31,812.61
Since Vincent *42 and Sadie filed separate Federal income tax returns on the community property basis for 1946 and 1947, each reporting only one-half of Vincent's distributive shares of net income from Jefferson Music Company for such years, respondent's adjustments to net income of each petitioner are as follows: 1946
1947
Community share of Vin-
cent
$20,529.23
$11,083.88
Community share reported
on return
12,791.56
9,653.76
Increase in income
$ 7,737.67
$ 1,430.12
Community share to Sadie
$20,529.23
$11,083.88
Community share reported
on return
12,791.56
9,653.76
Increase in income
$ 7,737.67
$ 1,430.12
Respondent's adjustments to net incomes of petitioners for 1949 and 1950 for their distributive shares of ordinary net incomes of Jefferson Music Company are as follows: 1949
1950
Distributive share as rede-
termined
$20,854.93
$31,812.61
Share reported on return
18,913.76
30,736.08
Increase in distributive
share
$ 1,941.17
$ 1,076.53
Jefferson maintained its business bank account with the First National Bank of Jefferson Parish, Gretna, Louisiana. During the years 1946, 1947, 1949, and 1950 Jefferson made deposits in *43 this bank account in respective aggregate amounts of $157,033.33, $124,012.97, $134,918.91, and $103,043.85 while disbursements by check on this account aggregated respective amounts of $156,663.40, $123,710.68, $136,117.45, and $102,490.23. The balances in the bank account at December 31, 1945, 1946, 1947, and 1948 were in the respective amounts of $612.06, $981.99, $1,284.28, and $7.53, with overdrafts at December 31, 1949, and 1950 of $1,190.99 and $637.37. The business receipts of Jefferson from its operations in 1946 are as follows: Receipts represented by bank deposits
$157,033.33
Undeposited receipts from business
used to make cash disbursements
for equipment and to pay expenses
58,513.36
Total receipts
$215,546.69
Less nonincome receipts: Return deposit F.A.B.
Distributing Company
$ 2,500.00
Proceeds from loan represented by note payable
25,000.00
Cash discount
135.00
Received from Carlos
Marcello
10,817.00
Equipment sold (accounted for elsewhere)
9,989.85
48,441.85
Business receipts
$167,104.84
The business receipts of Jefferson from its operations for the year 1947 are as follows: Receipts represented by bank deposits
$124,012.97
Undeposited receipts from business
used to make cash disbursements
for equipment and to pay expenses
21,016.44
Total receipts
$145,029.41
Less nonincome receipts: Equipment sold
$12,211.89
Refund of deposit
F.A.B.
1,000.00
13,211.89
Business receipts
$131,817.52
*44 The business receipts of Jefferson from its operations for the year 1949 are as follows: Receipts represented by bank deposits
$134,918.91
Undeposited receipts from business
used to make cash disbursements
for equipment and to pay expenses
13,347.98
Undeposited checks as disclosed by
accounts payable control (equipment purchases)
$ 4,846.97
Total receipts
$153,113.86
Less nonincome receipts: Loan from Joseph Poretto
$ 4,000.00
Capital contributions -
Carlos Marcello
15,000.00
$ 19,000.00
Business receipts
$134,113.86
The business receipts of Jefferson from its operations for the year 1950 are as follows: Receipts represented by bank deposits
$103,043.85
Undeposited receipts from business
used to make cash disbursements
for equipment and to pay expenses
45,864.46
Undeposited collections, as disclosed
by accounts payable control (equipment purchases)
16,652.91
Business receipts
$165,561.22
The disbursements by check drawn on the bank account of Jefferson are classified as follows: 1946
1947
1949
1950
Salaries
$ 150.00
Parts
$ 4,567.91
3,869.66
$ 3,538.08
$ 2,037.10
Records
6,039.10
6,751.55
2,098.62
2,007.61
Auto expenses, etc.
8,592.39
6,909.46
5,493.48
4,712.97
,utilities
1,871.67
1,954.60
1,364.39
1,408.30
Taxes
3,224.98
2,109.40
26,473.65
1,642.46
Freight
10.97
Advertising, etc.
273.70
429.63
677.29
Travel & entertainment
159.91
234.29
Insurance
1,781.50
1,867.29
1,467.07
747.08
Miscellaneous
2,200.55
9,461.71
8,150.19
9,773.53
Unidentified
4,000.39
Furniture & fixtures
83.58
Note receivable
1,000.00
870.00
Deposit - F.A.B. Dist. Co.
5,000.00
Accounts payable (equipment)
58,671.53
32,621.59
20,573.22
46,922.93
Notes payable
25,940.50
20,832.70
4,000.00
219.78
Bank charges
1,144.05
1,387.22
Checks drawn to cash
8,900.00
Account receivable & notes
9,122.88
984.71
Equipment
600.00
Promotion
466.94
N.S.F. checks
105.00
Unidentified
201.10
Drawings, Vincent
10,727.67
6,271.41
14,508.68
7,975.04
Drawings, Carlos
22,517.05
19,567.63
37,028.37
22,685.98
Total
$156,663.40
$123,710.68
$136,117.43
$102,490.53
*45 The books and records of Jefferson for the years in issue reflect numerous expenditures for which no checks were issued. These expenditures related to purchases of equipment and to business expenses. For example, the books and records included a deduction for salaries of $21,570.02 for the year 1946. The above check analysis, including all the disbursements by check of Jefferson for the year 1946, includes no disbursements for salaries. Accordingly, respondent included the $21,570.02 in business receipts not deposited and allowed a deduction of an identical amount in expenses. Where respondent increased income for undeposited business receipts represented by cash disbursements out of undeposited receipts, he allocated such disbursements to capital expenditures and to the appropriate expense classifications. Therefore, the increases in business receipts represented by cash expenditures for expenses were offset in respondent's net income determination for Jefferson for each year so far as cash disbursements for cash expenses were concerned. Respondent also allowed deductions for depreciation in respect of the capital expenditures for those years. Respondent determined that allowable *46 business expenses of Jefferson, exclusive of depreciation, for the years 1946, 1947, 1949, and 1950 were $71,243.02, $61,347.24, $63,188.45, and $66,554.41 respectively. In arriving at the deductions for allowable depreciation for Jefferson, respondent included in the costs of assets the amount of cash disbursements for equipment purchases shown as such in the books and records of Jefferson. Respondent's agents verified the equipment purchases by checking records and invoices of suppliers consistent with information shown in the cash disbursements in the books and records of Jefferson. By reason of respondent's method of redetermining income of Jefferson based on the use of the bank deposits plus cash expenditures method for redetermining gross income and the allowance of deductions for expenses based on the use of check disbursements and cash disbursements for the redetermination of allowable business deductions exclusive of depreciation, Jefferson Music Company has been allowed aggregate business deductions, exclusive of depreciation, over amounts claimed on its partnership returns of $5,397.99 for 1946, $10,606.27 for 1947, $6,346.49 for 1949, and $5,528.65 for 1950. Similarly, *47 by reason of respondent's method of redetermining the net incomes of Jefferson, the business has been allowed deductions for depreciation not claimed on the partnership returns for 1946 of $13,744.92, for 1947 of $26,134.79, and increased deductions for depreciation for 1949 of $27,210.08 and for 1950 of $34,504.52. The only depreciation on assets claimed on the partnership returns for any of these years were amounts of $2,005.48 for 1949 and $877.07 for 1950 relating to depreciation claimed on vehicles used in the business. The following additional amounts (disallowed by respondent in the deficiency notices) for depreciation on equipment and other property acquired by Jefferson during the years 1943 through 1945 are allowable: Year
Amount
1946
$8,791.65
1947
8,458.86
1949
5,155.79
1950
2,706.01
Disbursements of Jefferson included some checks which were paid by the bank on which drawn. The amounts determined to have been so handled were $4,000.39 for 1946 and $8,200 for 1947. Petitioners offered no testimony or written evidence to explain these items except for identification by respondent's revenue agent, who had originally proposed that the items be allowed *48 but whose recommendation in this respect was rejected by respondent in issuing his deficiency notices. Petitioners also did not offer into evidence the books and records of Jefferson, invoices, receipts, cancelled checks or any other documentation to support the claimed allowance of these items. Included in the bank deposits of Jefferson for 1946 was a $10,000 cash deposit made on June 25, 1946, in the First National Bank of Jefferson Parish. Such amount was treated as income by respondent. Included in the bank deposits of Jefferson for 1947 was a $13,500 deposit made on June 6, 1947, in the First National Bank of Jefferson Parish. The deposit consisted of two items - $3,000 in currency and a check or checks of $10,500. On June 5, 1947, a check in the amount of $10,500 was drawn on the Whitney National Bank, New Orleans, Louisiana, by News Service (Daily Sports News), signed by J. E. Fogarty, Partner, which was payable to the order of A. Marcello and endorsed by Anthony and Carlos Marcello.the check shows a bank endorsement by the First National Bank of Jefferson Parish dated June 5, 1947. The check reflects no endorsement by Jefferson Music Company. The bank endorsement of June 5, 1947, establishes *49 that the check was cashed or credited by the bank prior to the $10,500 check deposit made on June 6, 1947, to the bank account of Jefferson. The $10,500 check of News Service was not deposited in the bank account of Jefferson on June 6, 1947. On March 25, 1949, Jefferson issued a check for $3,662.65 to Rex Credit Company for the balance due that company by Joe Segreto. The check was in payment of the Jefferson Music Company guaranty to Rex for payment of a $5,000 loan made to Segreto. Segreto could not pay the note, so Jefferson paid it when called on its guaranty. Segreto borrowed the $5,000 in 1948 as one-half of the downpayment on a tavern he purchased in the historic French Quarter of New Orleans. Segreto failed to make the payments on the loan and his place was repossessed. The tavern provided Jefferson with a new and additional location for several of its coin-operated machines. The loan would not have been paid except for the guaranty, this being a standard practice with the coinmachine operators in the area to establish or stimulate sources of revenue. Most of the Rex Credit Company business was of such a nature. The amount of $3,662.65 was not allowed by respondent as a *50 deduction. Vincent and Sadie had living expenses of $4,000 during each of the years 1946 and 1947. Checks from partnership drawings applicable to living expenses totaled $2,106.89 in 1946 and $3,357.59 in 1947. Thus, Vincent and Sadie realized additional income, not reported on their tax returns for 1946 and 1947 of $1,893.11 and $642.41, respectively. Vincent and Sadie realized other income for 1949, not reported on their joint tax return for that year, in the amount of $1,211.52, as follows: Expenditures: D. H. Holmes furniture
$1,149.41
Deposits in checking ac-
count
4,269.79
Living expenses
2,907.82
$ 8,327.02
Source of funds: Sale of vacant land
$2,800.00
Withdrawals from New
Southport
1,315.50
Withdrawals from Jeffer-
son Music Co.
3,000.00
7,115.50
Other income
$ 1,211.52
Vincent and Sadie realized other income for 1950, not reported on their joint tax return for that year, in the amount of $10,514.88, as follows: Deposits in checking account
$ 4,008.70
Expenditures: Loss (Billionaire Club)
3,912.58
Living expenses
1,236.25
Investment in New Southport Club
1,357.35
Other income
$10,514.88
In determining *51 that petitioners had realized other income for the years 1946, 1947, 1949, and 1950, respondent took into consideration known sources of funds from withdrawals by Vincent from the Jefferson Music Company and from petitioners' personal bank account and from individual sales of property giving credit to petitioners for known sources of funds. The likely source of funds for the other income was from additional understatements of shares of income from Jefferson Music Company or income realized by petitioners in respect of interests in the New Southport Club. These likely sources have not been negated by petitioners. Petitioners have not offered testimony or written evidence to explain the source of funds for these additional income items or to show a possible nonincome source of funds for the items. Respondent used the net worth-expenditure method to corroborate his use of the bank deposits plus expenditures method. Petitioners substantially underestimated their estimated Federal income tax for the year 1950. Opinion 1. Use of bank deposits-expenditures method. Since the evidence in these cases shows that the books and records maintained by Jefferson Music Company did not clearly *52 reflect the gross or net income of the business for the years 1946, 1947, 1949, and 1950, the respondent was justified in reconstructing the net income of Jefferson by using the bank deposits-expenditures method. Section 41, Internal Revenue Code of 1939; Boyett v. Commissioner, 204 F. 2d 205 (C.A. 5, 1953) affirming a Memorandum Opinion of this Court; and Max Cohen, 9 T.C. 1156 (1947), affd. 176 F. 2d 394 (C.A. 10, 1949). Respondent has reconstructed the gross income of Jefferson Music Company for the years in issue by using the bank deposits-expenditures method; has capitalized the purchases of equipment beginning with acquisitions after January 1, 1946; has allowed depreciation thereon; and has computed business deductions for the same years on the basis of cash and check expenditures for business expenses. In our opinion the method of reconstructing income was not arbitrary but resulted from a consideration of available data reflected in the books of Jefferson, bank statements, deposit slips, cancelled checks, other documents, and third party records. 2. Burden of proof. Respondent having determined that petitioners realized income by *53 the use of bank deposits and expenditures, the burden of proof was upon petitioners to show that the various items of deposit or expenditure did not represent income. Hoefle v. Commissioner, 114 F. 2d 713 (C.A. 6, 1940) affirming 37 B.T.A. 1334 (1938). Faced with this burden of proof, petitioners remained quiet and failed to introduce into evidence books and records and other documentation on many items. The only witnesses were Segreto and Bohrer, who testified about the claimed guaranty loss, and respondent's revenue agent. We have been unable to draw several inferences urged upon us by petitioners because of the insufficiency of proof. However, we have resolved some of the issues in petitioners' favor. The record has been judged by the absence of evidence as well as its presence. 3. Depreciation. Petitioners contend that Jefferson Music Company should be allowed additional depreciation for the years in issue on equipment acquired by Jefferson during the years 1943 through 1945 and on hand during 1946, 1947, 1949, and 1950. We agree with petitioners. Depreciation should have been allowed on such equipment. We believe the amounts as originally determined *54 by the revenue agent, but completely disallowed by respondent in the deficiency notices, are reasonable. Our findings of fact so indicate. 4. Unidentified checks. Petitioners claim that unidentified items, totaling $4,000.39 for 1946 and $8,200 for 1947, drawn on the bank account of Jefferson Music Company, should have been allowed as a credit against net income. Petitioners introduced no evidence as to the items other than the revenue agent's testimony. They did not present analyses of check disbursements, cancelled checks, bank statements or any other records, or testimony concerning these unidentified items. The record does not show that the items were deposited in the bank account of Jefferson Music Company, that they constituted a part of cash disbursements expended for expenses or equipment previously included in income, or that they represented withdrawals by partners from the business for personal purposes. Petitioners had all the leads, books and records, and documentation available to respondent. And they were aware of the difference in the revenue agent's recommendations and the respondent's determination, but failed to introduce any evidence concerning these items. *55 The burden was on them to properly identify the items and establish that credit against net income, as determined by the respondent, should be allowed. They failed to do this. Accordingly, we sustain respondent's determination on these items. 5. Bank deposits. Petitioners single out two bank deposits which they say represent nonincome deposits. The first is a deposit made in the partnership bank account on June 25, 1946, in the amount of $10,000, and the second is a deposit made in such bank account on June 6, 1947, in the amount of $10,500. As to the 1946 deposit, the record shows that during the revenue agent's examination Jefferson had contended through its accountant, Hooper, that in the year 1946 Carlos Marcello allegedly had borrowed $26,000 from Sylvester Carolla, and that of the $26,000 the sum of $10,000 was purportedly applied as the $10,000 deposit made on June 25, 1946, in Jefferson's bank account. Neither Carlos nor Vincent testified concerning these contentions. The revenue agent testified that the contentions were advanced; that no statements concerning them were obtained from Carlos or Vincent Marcello; that Sylvester Carolla had been deported as an undersirable *56 alien; that he had no opportunity to interview Carolla because Carolla was not in the United States; and that there was insufficient information to show that the $10,000 deposit represented proceeds of a loan. Despite petitioners' assertions to the contrary, there is no showing in this record that Carlos withdrew $10,000 from Jefferson's bank account on June 25, 1946; that such withdrawal, if made, was in any way related to the $10,000 cash deposit of June 25, 1946; that respondent charged the alleged $10,000 withdrawal to Carlos' drawing account; or that Carlos used withdrawal proceeds, if made, to purchase a home in Jefferson Parish. We are unwilling to infer from this proof, or lack of it, that the $10,000 was a nonincome deposit. Petitioners have failed to carry their burden of proof on this item. As to the 1947 deposit, there is nothing in the record connecting the $10,500 check issued by News Service (Daily Sports News) on June 5, 1947, with the deposit of June 6, 1947, made in the bank account of Jefferson Music Company. This check was not identified as a part of the June 6, 1947, deposit and we have found as a fact that it was not deposited in Jefferson's bank account. The *57 check does not bear the endorsement of Jefferson. The revenue agent testified that nothing was said to him about the check representing a loan from Anthony Marcello; that the particular check could not be identified as a deposit made in the bank account of Jefferson Music Company; and that the deposit slip had no indication of what check in the amount of $10,500 had been deposited. Here again, we think petitioners have failed to establish that the $10,500 deposit of June 6, 1947, represented nonincome proceeds. We sustain respondent on this item. 6. Segreto guaranty loss. The facts with respect to this item are fully set out in our findings and are not in dispute. The loss was clearly business connected. Respondent merely takes the position that the item was allowed in his computation of expenses. Petitioners contend that it was not allowed. The revenue agent frankly admitted that he could not definitely determine whether the amount had been allowed because he had lost his check disbursements work sheet for 1949. Under the circumstances we hold that such amount was not allowed by respondent but should have been. 7. Other unreported personal income. Petitioners contend that respondent *58 erred in increasing their income for the years in issue in the respective amounts of $2,893.11, $1,642.41, $4,811.52, and $14,689.88. We have set forth in our findings of fact the various items and amounts of additional income realized by petitioners for the years 1946, 1947, 1949, and 1950. Some adjustments have been made in respondent's determinations. Petitioners assert that Vincent had a savings account in his own name from 1938 to 1948 and a joint savings account with his father, Joseph Marcello. Both of these are alleged to be sources of funds, not considered by respondent, for the other income items here in controversy. There is no merit to the assertion. As to the alleged individual savings account, petitioners have not introduced into evidence the pass book and they have not established any withdrawals by Vincent from such an account which would constitute a source of funds for the other income. In short, there is no probative evidence. As to the alleged joint savings account, the evidence shows that the account was maintained in the name of Joe Marcello, Belle Chasse, Louisiana. Although Vincent was authorized to sign checks on the account as well as his father, petitioners *59 offered no evidence that Vincent ever withdrew any amount from the account. Respondent's agent did consider this savings account and specifically rejected its withdrawals as sources for the other income items of petitioners. We agree with respondent and reject petitioners' contention. 8. Addition to tax. Petitioners offered no evidence to show error in respondent's determination that they are liable under section 294(d)(2) for an addition to tax for substantial understimation of their estimated income tax for the year 1950. Accordingly, we hold for respondent on this issue. The correct amount of the addition to tax can be determined in the Rule 50 computation. 9. Overpayment claimed for 1948. Petitioners claim a refund of an alleged overpayment in income tax of $3,703.88 for the year 1948, a year in which respondent did not determine a deficiency against them. We have no jurisdiction to determine an overpayment for 1948. See section 272(g), Internal Revenue Code of 1939; Arc Realty Co., 34 T.C. 484, 501 (1960); and Fisher v. Commissioner, 149 F. 2d 540 (C.A. 7, 1945). To reflect the determinations made herein and the concessions made by petitioners, *60 Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Vincent Marcello, Docket No. 83197, and Vincent and Sadie Marcello, Docket No. 83198.↩
2. All references herein relate to the Internal Revenue Code of 1939 unless otherwise noted.↩